Abraham J. Gellinoff, J.
In these consolidated proceedings pursuant to article 78 of the CPLR, petitioners, various hospitals, challenge the determination of respondents, the Commissioner of1 the Department of Health of the State of New York and the Superintendent of the Insurance Department of the State of New York, certifying and approving the 1973 rate schedules for payment to petitioners by respondent Associated Hospital Service (AHS).
Respondent AHS is a corporation organized under article 9-C of the Insurance Law, for the purpose of furnishing medical expense indemnity. Prior to 1969, AHS reimbursed the hospitals for the services rendered AHS subscribers by paying, at the end of each year, a sum based upon the hospitals’ actual cost in providing such service, at a rate approved by respondents commissioner and superintendent. However, with the burgeoning of hospital costs during the 1960’s, the Legislature found “ that it is essential that an effective cost control program be established which will both enable and motivate hospitals to control their spiraling costs.” Accordingly, it enacted the “ Cost Control Act of 1969 ” (L. 1969, ch. 957), “ to provide for uniform measures on a State-wide basis to control hospital costs without the sacrifice of quality of service ” (L. 1969, ch. 957, § 2).
The Cost Control Act established a prospective reimbursement system, under which rate schedules for payments for each year are established in advance, based on estimates of cost. Also, subdivision 3 of section 2807 of the Public Health Law was amended to-provide that the hospitals were not to be reimbursed their actual costs, but rather: “ the commissioner shall determine and certify to the superintendent of insurance and the state director of the budget that the proposed rate schedules for pay-' ments for hospital, and health-related service * * * are . reasonably related to \the ¡costs .of efficient production of such. ■ service. In making such certification, the commissioner shall take into consideration the elements of cost, geographical differentials in the elements of cost considered, economic factors in the area in which the hospital * * * is located, the rate of increase or decrease of the economy in the area in which the hospital * * * is located, costs of hospitals * * * of comparable size, and the need for incentives to improve services and institute economies ”. (Emphasis added.)
The net effect of the Cost Control Act was to stimulate the , hospitals to greater cost control, by informing them in advance *155 of the payments they were to receive from AHS, and by basing such payments on prescribed rate schedules ‘ ‘ reasonably related to the costs of efficient production ’ ’ of hospital services.
In the instant petitions, petitioners challenge various aspects of the rate schedules which were promulgated by AHS for 1973, and which the commissioner and superintendent certified to be “reasonably related to the costs of efficient production”.
First, some of the petitioners contend that they were improperly denied a hearing prior to certification of the rate schedules. However, it is undisputed that the hospitals were consulted prior to certification, and that they had the opportunity, at various conferences with the commissioner, to fully express their views. Moreover, neither the relevant statute nor considerations of due process require a formal hearing prior to certification by the commissioner (see Matter of Mid-Island Hosp. v. Wyman, 25 A D 2d 765).
Secondly, some of the petitioners challenge the rate schedules on the ground that they do not reimburse them for all their costs, which, they claim, were efficiently incurred. This argument overlooks the intent of subdivision 3 of section 2807 of the Public Health Law. That section does not require reimbursement for all efficiently incurred expenses; it requires that respondents make a projection, in advance, of a rate which shall foe reasonably related to the costs of efficient production. It is then incumbent upon the hospitals to attempt to keep their costs at or below that rate.
Additionally, petitioners challenge, in various respects, the methods by which the 1973 rate was set. These complex, technical, arguments have been exhaustively presented by the parties, and each has been carefully analyzed by the court. For the purpose of this decision, however, it will suffice to treat with . them briefly.
Petitioners urge that the 1973 rate schedules improperly ignore the increased intensity of services provided patients, and improperly compute the amount to be paid petitioners for community service costs. Additionally, some petitioners assert that the basis for the 1973 projections — costs actually incurred in 1971" — was unreliable.
Upon analyzing all the papers submitted, the court is convinced that — regardless of whether the court would agree with respondents ’ determinations were the court empowered to consider them de novo — the commissioner and superintendent did not act arbitrarily or capriciously in concluding that the rate schedules, in the above respects, were in fact “ reasonably related to. *156 the costs of efficient production Petitioners are, of course, not precluded from seeking administrative reconsideration of the rate schedules as provided in chapter 14 of the formula.
In one respect, however, petitioners’ challenge is meritorious, and requires annulling respondents ’ determination and remitting the matter for recomputation.
In computing the 1973 rate schedules, respondents, in various respects, gave effect to the Economic Stabilization Act of 1970, and the executive orders promulgated thereunder. Thus, in projecting various costs, the rate schedules rely on the wage and price increase limitation contained in the Federal program (see Executive Order 11627, dated Oct. 15, 1971; 36 Fed. Reg. 20139). They further impose a 6% limit on the increase in total reimbursement payment over that made the previous year, relying upon the 6% total revenue increase limitation provided for in the Federal program. Petitioners allege that the imposition by respondents of such limits violates respondents’ duty under subdivision 3 of section 2807 of the Public Health Law to set a rate “ reasonably related to the costs of efficient production Respondents concede that they are not empowered to enforce the price and revenue regulations promulgated pursuant to the Economic Stabilization Act. They assert, however, that, as provided in subdivision 3 of section 2807, the rate schedules merely utilize the limitations as “ economic factors in the area in which the hospital is located,” in determining the projected “ costs of efficient production ”.
It is unclear from the papers submitted in what manner the rate schedules rely on the wage and price increase limitation. If respondents considered the limitation merely as a factor in projecting economic conditions, they did so appropriately. However, to the extent they imposed the limitation as an absolute ceiling on projected increases in costs, without regard to whether it was in .fact reasonably related to the actual increase in costs, then the rate schedules do not meet the requirements of subdivision 3 of section 2807; and respondents acted arbitrarily and capriciously in certifying them.
Similarly, by limiting the increase in over-all reimbursement payments to 6% above those of the previous year, without regard to the actual projected increase in “ the costs of efficient production,” respondents failed to adhere to the requirements of subdivision 3 of section 2807. The possibility that petitioners’ total revenues could exceed the Federally mandated limit on ihcreases in revenue is not properly the concern of respondents *157 in setting the rate AHS is to pay for services rendered its subscribers.
' Accordingly, the petitions must be granted; respondents’ determinations are annulled, and the matter is remitted to respondents for recalculation of the 1973 rates in a manner not inconsistent with this decision.
In light of the above, the motion to reargue the decision granting consolidation is denied as academic.