Andrew R. Tyler, J.
In this CPLR article 78 proceeding petitioner (St. Luke’s) a voluntary, not-for-profit hospital, seeks (1) review of the denial by respondent (the commissioner) of its appeal for revision of St. Luke’s Medicaid reimbursement rate for the fiscal year 1972 (which began on October 1, 1971) and (2) to compel the State to recompute said reimbursement rate in accordance with the State’s own regulations — Part 86 of title 10 of the Official Compilation of Codes, Rules and Regulations of the State of New York — and in compliance with subdivision 3 of section 2807 of the Public Health Law wherein it is set forth: "the commissioner shall determine and certify * * * that the proposed rate schedules for payments for hospital and health-related service * * * are reasonably related to the costs of efficient production of such service”. According to St. Luke’s the recomputation it seeks would reflect that the sum of $946,067.45 is still due for basic in-patient services rendered by St. Luke’s to its Medicaid patients in 1972.
It appears that on March 3, 1972 — after the State had calculated but before it had certified St. Luke’s reimbursement rate predicated on the complex formula established in Part 86 —the commissioner promulgated an alternate flat rate providing for a maximum 102.5% increase factor in response to the imposition of Federal wage and price controls on hospital services that became effective on November 14, 1971 under the Economic Stabilization Act of 1970. St. Luke’s maintains that its new Medicaid reimbursement rate resulted in a payment by the State of more than $6 per diem less per patient during the 1972 fiscal year than would have been received under the original calculations (which were based on an increase factor of 115%). St. Luke’s also claims that because of the reduced cost base resulting from its 1972 restricted reimbursement rate it has received lower rates in subsequent years to a point where "St. Luke’s is now losing money in rendering care to Medicaid patients”.
It is St. Luke’s basic position herein that the afore-mentioned figure of $946,067.45 represents the loss of "the vitally needed profit * * * to which we were entitled under Part 86 methodology” pursuant to which the commissioner was required to fix St. Luke’s Medicaid reimbursement rate prospectively for the 1972 fiscal year. In fixing this rate the required *590 calculations included a trending of economic factors, based on the prior year’s costs and projected cost increases, with a view towards the overall objective of stabilizing hospital costs by providing hospitals with an incentive to budget their costs so as to obtain a "profit” from the ultimate difference between the prospective reimbursement rate and the actual cost of services rendered. St. Luke’s further argues that the purpose of said profit incentive principle was directly contradicted by the commissioner’s denial of its appeal on the ground that St. Luke’s was unable to furnish evidence that it sustained an actual cash loss in its treatment of "Medicaid patients” in the fiscal year 1972, whereas such a loss in no way underlies St. Luke’s grievance herein. Rather, St. Luke’s maintains that with respect to in-patient services, "in reliance upon Part 86, we commenced implementation of a drastic cost-cutting program * * * and deferral of new health programs so as to earn a profit” and thereby diminish, to some extent, the effects of heavy financial setbacks sustained in recent years — an $11,500,000 deficit was incurred in the fiscal years 1969-1974. St. Luke’s further asserts that said losses have stemmed mainly from "financing emergency room and clinic programs rendered as a public service to the community * * * in a neighborhood of 'working poor’ people who earn too much to qualify for Medicaid assistance, and not enough to afford a family doctor. Their medical insurance, if any, usually covers only actual hospitalization, but not out-patient (i.e. clinic) services.” According to St. Luke’s, "it has to find a new source of funds to offset its losses or cut back radically out-patient service and leave the community without adequate medical facilities and personnel.”
It is the contention of the petitioner that the respondent acted in an arbitrary, unreasonable and economically unjustifiable manner, and that the respondent was under no legal compulsion to mandate a 102.5% rate limitation. Additionally, petitioner argues that the respondent was arbitrary in refusing to revise its 1972 reimbursement rate in the face of the October 4, 1973 order from the Cost of Living Council allowing petitioner a gross overall income in excess of the 6% statutory ceiling imposed by the October 27, 1972 directive of the council.
It is the decision of this court that the petitioner has shown that it sustained a loss during the 1972 fiscal year by reason of its having participated in the Medicaid program. It is also *591 the decision of this court that the respondent did act arbitrarily and capriciously in denying petitioner’s appeal for an upward revision of its 1972 reimbursement rate. The respondent’s insistence on cost justification at the appeals stage is in direct conflict with the cost control objectives set forth in Part 86 of respondent’s regulations. (10 NYCRR Part 86.) There exists no reasonable basis for an insistence by the respondent of a showing of actual financial loss by a participating hospital in order to effectuate a retroactive revision of Medicaid reimbursement rates.
Putting the matter in its simplest terms, the respondent may not, by imposing a cost justification requirement, abandon the profit incentive concept which was bufft into the prospective reimbursement system that is now the subject of these proceedings. As stated by the court in Acker v Berman (54 Misc 2d 647, 649): "The interpretation by an administrative agency of its own regulations is entitled to the greatest weight. [Cases cited.] However, such interpretation must not be arbitrary or unreasonable. The unequivocal direction of the respondent here to use a particular method for determining expenses ought not to be subject to variation by an unwritten and unpublicized 'policy’ declaration.”
It is important to note that Part 86, as read by this court, requires that a hospital is entitled to receive funds in accord with its prospective reimbursement rate, regardless of actual costs. The fact that the petitioner would have a profit in this instance should not be a factor in determining the amount of money that it should receive. A hospital showing a profit is not the same as a business corporation showing a profit. For in the case of the hospital, the profit will be used for the continuation of health services which are sorely needed in the community where it is located.
The position of the petitioner is further buttressed by reference to the case of Matter of Presbyterian Hosp. v Ingraham (78 Misc 2d 152), affirmed by the Appellate Division on July 1, 1975 (49 AD2d 520). There, the court held that the attempt by the commissioner to impose economic stabilization program limitations in trending 1973 prospective reimbursement rates for hospital services rendered to Associated Hospital Services subscribers failed to adhere to the requirements of subdivision 3 of section 2807 of the Public Health Law of this State. This court finds the situation of the petitioner not dissimilar from that of the afore-mentioned case.
*592 St. Luke’s Hospital has rendered high quality health services to the upper west side community for many years and any curtailment of its services for lack of funds would clearly constitute a severe deprivation to that community. This fact, however, is not dispositive with respect to the question of whether the decision of the respondent which is complained of was arbitrary and unreasonable. In this case, though, the reason for curtailment in services provided by the petitioner is that it had planned to apply a projected earned profit from the Medicaid in-patient program towards its clinic service, and that earned profit will be wiped out by unreasonable denial of petitioner’s appeal for an upward revision of its 1972 reimbursement rate. In so doing, the respondent has contravened its own cost control objectives as set forth in Part 86 of its regulations.
It is well settled that the scope of review by a court in an article 78 proceeding is limited to deciding whether a particular determination by a respondent is arbitrary or capricious or was affected by an error of law. (Matter of Stallone v Wyman, 61 Misc 2d 416.) This court will not interfere with the lawful exercise of discretion by an administrative agency (Matter of Zara Contr. Co. v Cohen, 45 Misc 2d 497, affd 23 AD2d 718). However, neither will this court countenance actions taken by an administrative agency which contravene its own stated policy in the name of preserving administrative discretion.
Accordingly, it is the decision of this court to annul respondent’s denial of petitioner’s appeal for a revision of its 1972 reimbursement rate for in-patient services rendered to Medicaid patients in 1972, and the respondent is hereby directed to revise petitioner’s 1972 reimbursement rate in accordance with established regulations, and to reimburse petitioner in the additional amount of at least $946,067.45.