In the Matter of ST. LUKE'S HOSPITAL CENTER, Respondent, v HOLLIS S. INGRAHAM, as Commissioner of the Department of Health of State of New York, Appellant.

First Department, May 13, 1976

182

*Jesse J. Fine* of counsel *(Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General),* for appellant.

*Larry M. Lavinsky* of counsel *(Jonathan M. Herman* with him on the brief; *Proskauer Rose Goetz & Mendelsohn,* attorneys), for respondent.

*Per Curiam.* In this article 78 proceeding the trial court has directed the respondent State Commissioner of Health to revise upward the reimbursement rates to petitioner St. Luke's Hospital for in-patient services rendered to Medicaid patients in 1972 to a rate which shall reimburse petitioner in an additional amount of at least $946,067, and to certify that revised rate to the State Director of the Budget.

We reverse because we are unable to say that the State Commissioner of Health has acted arbitrarily or capriciously.

Subdivision 2 of section 2807 of the Public Health Law relating to payments for hospital service and health-related service made by government agencies states that payment shall be at rates approved by the Director of the Budget. Subdivision 3 provides that "[p]rior to the approval of such rates, the commissioner [of health] shall determine and certify to * * * the state director of the budget that the proposed rate schedules * * * are reasonably related to the costs of efficient production of such service. In making such certification the commissioner shall take into consideration the elements of cost * * * economic factors in the area in which the hospital is located * * * and the need for incentives to improve services and institute economies." In the effort to provide such incentives (absent from any retrospective individual cost-plus formula) the commissioner has determined that "[p]ayment rates will be established on a prospective basis." (10 NYCRR 86.15 [a].)

Such prospective rates had been fixed on the basis of a rate year ending June 30. Because of delay in receiving previous years' figures from hospitals, and perhaps for other reasons, the commissioner decided in 1971 to change to an October 1— September 30 rate year in fixing prospective reimbursement rates. For the interim between July 1 and September 30, 1971, and before the final prospective rates had yet been fixed, the commissioner fixed a provisional rate at 110% of the previous year's rates. This made a provisional rate for petitioner St. Luke's Hospital of $137.93 per in-patient day. Respondent commissioner then proceeded to attempt to determine a prospective rate for the period ending September 30, 1972 and arrived at a figure of $146.46 per in-patient day, and this figure apparently became known to the hospitals although it was in fact not officially certified because of intervening events. On August 15, 1971, before the commissioner had yet certified any figures for the 1972 rate period (ending September, 1972) the President of the United States issued an Executive Order which froze prices and wages for a 90-day period and established a Cost of Living Council. After the 90 days, this council issued regulations creating two sets of ceilings, one a ceiling on over-all revenues of 6% in excess of the prior year, and the other a ceiling on cost increases that the hospitals could grant of 5.5% on wages and 2.5% on nonwage

expenses. These regulations became effective on November 14, 1971.

The President's freeze order of August 15, 1971 obviously rendered obsolete any regulations based on the assumption that the future economy was to be unregulated as to prices and income. The commissioner's $146.46 projection had been based on the assumption, among other things, of an unregulated economy, with the costs that hospitals would have to bear also unregulated. It now appeared that the economy was to be regulated, and that the hospitals' costs would thus to some extent at least also be regulated. The commissioner therefore never certified the $146.46 figure.

Instead after the Cost of Living Council had promulgated its regulations, the commmissioner added 2.5% to the interim rates previously promulgated and certified that as the rate.

It is apparent that one reason for the 2.5% figure was that the Economic Stabilization Program ("ESP") promulgated by the Cost of Living Council did not require any cost justification for an increase in rates up to 2.5% of the "base price." As the interim rate was already 10% above the rate for the period ending June 30, 1971, this additional 2.5% meant an increase of something over 12.5%. The commissioner determined that this increase would be a good indicator of the movement of the new controlled economy without the necessity of showing any special or unusual costs, and further determined that any increase over this 2.5% over the 110% would have to be cost-justified by any individual hospital by submission of necessary data to the commissioner. In the case of petitioner St. Luke's Hospital the additional 2.5% made the rate $141.38 per patient day and this was the rate the commissioner certified for the 1972 period.

The commissioner's regulations (10 NYCRR 86.17) provide for prospective revisions of certified rates on an adequate factual showing. The commissioner refers to this as a review or appeal procedure, and states that if a hospital submitted data showing an increase in cost that would have justified a higher rate, the department would have increased the rate, provided an exception was obtained from the Cost of Living Council.

Petitioner St. Luke's Hospital applied to the Cost of Living Council for an exception from the 6% limitation on over-all revenues. This was at first denied. Reconsideration was requested and on October 4, 1973 the Cost of Living Council

granted the exception. (In fact petitioner's revenues had apparently exceeded the 6% limitation for the year 1972 even before this exception was granted.) The grant of the exception in October, 1973 came a year after the expiration of the 1972 rate year and two years after its commencement.

Thereafter the petitioner came back to respondent commissioner and now requested the $146.46 figure as reimbursement retroactively for the 1972 rate year. Petitioner did not submit any cost-justification figures, proceeding apparently on the assumption that with the grant of the exception the previously determined $146.46 figure should automatically become effective.

The commissioner refused petitioner's application. We cannot say that he was unreasonable in doing so for these reasons:

(a) The exception granted from the 6% limitation on increase of revenue in no way bore upon or affected the "costs of efficient production" of petitioner's hospital services. It was irrelevant to that.

(b) No action taken in October, 1973 could *prospectively* fix expenses and costs for a period ending September 30, 1972.

(c) Nor could it change the fact that the freeze and the ESP were in effect in 1972 and were in fact an economic factor in that year.

(d) Nor could it in any way make the $146.46 figure calculated on the assumption of an unregulated economy a realistic or appropriate figure for 1972, either prospectively or retrospectively.

Thus the Commissioner of Hospitals did not act unreasonably in refusing retroactively to fix a reimbursement figure of $146.46 on a mere showing that the Cost of Living Council had granted an exception to the hospital from the 6% limitation on its over-all revenues. It may be that the commissioner could recompute the rates retroactively to relieve hardship or to cover gross inequities. (Cf. *Presbyterian Hosp. v Ingraham,* 48 AD2d 491, 495.) But at a minimum this would seem to require a factual showing of hardship and inequities and this the petitioner did not attempt to do.

In *Matter of Presbyterian Hosp. v Ingraham* (78 Misc 2d 152, affd 49 AD2d 520) upon which petitioner relies, the court remitted the matter to the Commissioner of Hospitals and Superintendent of Insurance for recalculations of rates. But it

based its determination on the following: "It is unclear from the papers submitted in what manner the rate schedules rely on the wage and price increase limitation. If respondents considered the limitation merely as a factor in projecting economic conditions, they did so appropriately. However, to the extent they imposed the limitation as an absolute ceiling on projected increases in costs, without regard to whether it was in fact reasonably related to the actual increase in costs, then the rate schedules do not meet the requirements of subdivision 3 of section 2807; and respondents acted arbitrarily and capriciously in certifying them." *(Presbyterian Hosp. v Ingraham, supra,* p 156.) The present case is however distinguishable in that (a) the limitation was not imposed as part of the 6% limitation on revenue; (b) the commissioner has explicitly stated that "the Department determined that the increase 2.5%, when added to the 10% or 8%, would be a good indicator of the movement of the new controlled economy without the necessity of showing any special or unusual costs"; and (c) "[t]he Department felt that these rates were reasonable, given the new controlled economy and in the light of the availability of procedures to demonstrate the need for higher rates in any individual case." Thus the question that was unclear in the *Presbyterian Hospital* case is clear in this case, and there is no point in sending the matter back to the commissioner to have him determine whether what the assistant commissioner's affidavit stated is the fact.

On the whole case it has not been established that the respondent commissioner acted arbitrarily or capriciously.

The judgment of the Supreme Court, New York County (TYLER, J.), entered December 11, 1975, should be reversed, on the law, without costs and without disbursements, and the petition dismissed.

The order of the Supreme Court, New York County (SAYPOL, J.), entered March 17, 1975, denying the motion to dismiss for lack of jurisdiction of the subject matter, should be affirmed, without costs and without disbursements, on the opinion of SAYPOL, J. at Special Term.

MARKEWICH, J. P., MURPHY, SILVERMAN, CAPOZZOLI and LANE, JJ., concur.

Judgment, Supreme Court, New York County, entered on December 11, 1975, unanimously reversed, on the law, and vacated, without costs and without disbursements, the petition

dismissed and the determination of respondent commissioner reinstated.

Order, Supreme Court, New York County, entered on March 17, 1975, unanimously affirmed, without costs and without disbursements.