Memorandum. Determinations affirmed, with costs, on the opinion of Mr. Justice Myles J. Lane at the Appellate Division in the first-entitled proceeding with the following added comments.
Neither the voluntary hospitals nor the Associated Hospital Service (AHS) fall into the usual categories of regulated private enterprises or regulated public utilities. They are quasi-public corporations emburdened with public responsibilities offset by governmentally granted privileges and tax exemptions. Theoretically, it could be argued, and legally sustained, that the voluntary hospitals are entitled to reimbursement limited to the allocated cost of providing services for AHS subscribers. Instead, by statute and regulation the AHS subscribers through the reimbursement scheme are required also to contribute-to nonincome producing services required of the voluntary hospitals from which the paying subscribers may and usually receive no benefit (Public Health Law, § 2807, subd 3; 10 NYCRR, former 86.2 [d]). Hence, the balancing adjustment of the several elements in the AHS formula, as, for example, in the case of the Community Service Factor.
It is simplistic to treat the problem, as do the appellants, as if this were a utility rate regulation case or AHS were a private insurance enterprise. Moreover, the reimbursement rate to the hospitals although fixed in the first instance by AHS, must be approved by both the Superintendent of Insurance and the Commissioner of Health. Their review, as noted by Mr. Justice Lane at the Appellate Division, is subject only to the test of rationality, that is, whether their determinations were arbitrary or capricious.
The nub of the vexing problem is that hospital costs have been spiraling out of reach of an economically tolerable rate- *869 structure for AHS, that is, the rate-structure under which it charges premiums to subscribers. Some of these costs have nothing to do with the costs directly allocable to the services rendered to the subscriber.
Neither AHS nor the subscribers owe a duty morally or legally, except for the statute now applied, to support the hospitals, but only to pay an allocable share of that support, not less than the cost of the services received by the subscribers, who are paying patients. To avoid external supervision of the hospitals, the statutory plan provides for prospective ceilings, calculated on an adjusted past experience, on the reimbursement to them, and the hospitals are obliged to keep their prospective expenditures within the range of AHS reimbursement plus whatever other sources of funds they have. The alternative might well be the direct regulation of costs and services in hospitals by outsiders, a prospect obviously to be abhorred. In this context it borders on the unacceptable, for courts on their own to presume to solve the difficult economic and professional problems involved in providing good and efficient hospital services, or to decide how much of a hospital’s nonincome producing services should be paid by paying patients. That is the task of the experts, in this case, the two State departments which, under the statute, oversee the rates charged by AHS and received by it and the reimbursement rates it must pay to hospitals. If their determinations are rational that should be the end of the judicial inquiry.
Matter of Proccacino v Stewart (25 NY2d 301) is hardly relevant to the problem at hand. It involved the converse, namely, the increase of subscribers’ charges payable to AHS to meet its obligations and yet maintain its required surplus. The dissent in that case turned on the absence of proof to justify the high and thus far uncontrolled hospital costs on which the increased charges were based.
Appellants in effect challenge the purpose of the statute and its prospective ceilings and confuse the aggregate of their costs and how that aggregate is to be shared by AHS subscribers in excess of the cost of services to these paying patients. Moreover, they misapply the complicated formula which is designed to measure in some fair degree the allocation of a burden of ballooning hospital costs spawned only in part by inflation but mostly by hospital excesses in a reimbursed nonprofit setting and the failure of hospital users to identify the share of the cost borne by them through the premiums *870 they pay as a group. As with regular insurance the premium-paying public may think it costs them little or nothing so long as the insurer pays the bill.