George L. Cobb, J.
In an action for a permanent injunction, plaintiffs move for an order which would enjoin the defendant the Woman’s Christian Association of Jamestown, Inc. (hereinafter "Hospital”) pendente lite from charging any subscriber of defendant Chautauqua Region Hospital Service Corporation (hereinafter "Jamestown Blue Cross”), or any subscriber of any other hospital service corporation, an amount in excess of the reimbursement rates for the Hospital established pursuant to section 2807 of the Public Health Law.
Effective October 15, 1976, defendant Hospital terminated the operating agreement with Jamestown Blue Cross which had been in effect since 1973. That agreement conformed to the general pattern of such agreements in that the Hospital agreed therein to "furnish hospital service to the subscribers of [Jamestown] Blue Cross in accordance with the contracts made between [Jamestown] Blue Cross and its subscribers”, and Jamestown Blue Cross agreed to compensate the Hospital for its services pursuant to a reimbursement formula which was subject to certification by the Commissioner of Health and approval by the Superintendent of Insurance. Because the Hospital in 1975 sustained an operating loss in excess of $285,000, which was an increase in excess of $226,000 over the loss sustained in 1974, and the Blue Cross reimbursement rate for 1976 was frozen by State officials at the 1975 level, the defendant Hospital terminated the said operating agreement so that it might increase its revenues by charging directly to the patients who were covered by Blue Cross such sums as the Hospital deemed appropriate and necessary to maintain its financial stability, even if such sums exceeded the amounts payable by Jamestown Blue Cross.
Immediately prior to the 1969 amendment of section 2807 of the Public Health Law, the stated objective of State review of payments to be made by Blue Cross and other corporations organized pursuant to article IX-C of the Insurance Law was to insure that Blue Cross payments were reasonably related to the costs of providing hospital services (see L 1969, ch 957, § 4). However, said section 2807 was amended by said chapter 957 of the Laws of 1969 (see Public Health Law, § 2807, subd 3) so that thereafter Blue Cross payments for such services might be made only at rates which the Commissioner of Health had found were "reasonably related to the costs of *805 efficient production of such service” and in fixing those rates, the Commissioner was required to consider, among other things, "the need for incentives to improve services and institute economies” in hospital operations.
The plaintiffs and Jamestown Blue Cross say that, although the said section 2807 of the Public Health Law does not purport to directly control hospital charges, the legislative history of the 1969 amendments and the recitations therein contained, compel the conclusion that the Legislature intended to, and did, impose direct price controls on hospital charges to patients who are entitled to coverage for hospital services pursuant to contracts issued by corporations organized under article IX-C of the Insurance Law. For instance, in enacting the 1969 amendments, the Legislature found that (L 1969, ch 957, § 2) "it is essential that an effective cost control program be established” and stated that "the intent of this chapter is to provide uniform measures on a state-wide basis to control hospital costs without the sacrifice of quality of service.” This intent, it is said, would be thwarted unless the amendment be construed as forbidding hospitals which do not have operating agreements with Blue Cross from charging any sums in excess of the said section 2807 reimbursement rate.
A perusal of the language of the 1969 amendments, however, reveals that, after the Legislature had recorded its finding that hospital costs must be controlled, it elected to achieve that objective by limiting the sums that government and said "IX-C” corporations might pay to hospitals. As noted by Special Term in Matter of Presbyterian Hosp. v Ingraham (78 Misc 2d 152, 154r-155, affd 49 AD2d 520, affd 39 NY2d 867), "[t]he net effect of the Cost Control Act was to stimulate the hospitals to greater cost control, by informing them in advance of the payments they were to receive from AHS * * * [and it was] * * * then incumbent upon the hospitals to attempt to keep their costs at or below that rate”. Since a substantial portion of the revenue of hospitals in this State is derived from payments made by Blue Cross and by government agencies, the legislative assumption that the imposition of controls on such payments would control hospital costs without impairing the quality of hospital services was a reasonable one. The legislative amendments, then, described with clarity the means the Legislature had selected to solve the problem it had recognized and described in its legislative *806 findings and since the legislative language is unambiguous, the court need not, and should not, interpret what needs no interpretation (McKinney’s Cons Laws of NY, Book 1, Statutes, § 76).
The papers now before the court demonstrate that, at least in the case of the defendant Hospital, legislative expectations have not been realized. The operating costs of this hospital, and possibly those of others, continue to rise at an alarming rate even though Blue Cross reimbursement rates have been set in accordance with the amended statute. That circumstance, however, does not justify a rewriting of the statute by the judiciary in the hope that the objective which the Legislature had in mind might thereby be realized. As was said in Matter of New York Tel. Co. v Public Serv. Comm. (286 App Div 28, 37, affd 309 NY 569), the "[cjourts should not feel impelled to give a strained construction to statutory language in order to serve some particular economic viewpoint, however forward looking such a viewpoint may appear to be”. If the Legislature had deemed it necessary to impose direct price controls on hospital charges, it could have selected language which would have accomplished that result, but it did not do so.
To succeed upon this motion for a preliminary injunction, plaintiffs must demonstrate a strong probability of ultimate success in the action and a clear right to the provisional remedy of a preliminary injunction (Westchester Chapter, Civ. Serv. Employees Assn. v Levitt, 50 AD2d 1105, affd 37 NY2d 519). Since plaintiffs have not sustained that burden, the motion must be, and it will be, denied.