### (August 27, 1981)

■ BROOKLYN SOCIETY FOR THE PREVENTION OF CRUELTY TO CHILDREN, INC., Respondent-Appellant, v BARBARA B. BLUM, as Commissioner of New York State Department of Social Services, et al., Appellants-Respondents. — Judgment and order (one paper) of the Supreme Court, New York County (Fingerhood, J.), entered April 13, 1981, denying renewal and granting reargument, and upon reargument modifying the prior order of the court so as to delete the finding of a 60-day limitation for (foster care) payments as arbitrary, and, as so modified, adhering to a judgment and order (one paper), entered December 2, 1980, which declared arbitrary and capricious respondent's criteria for group emergency foster care status, and directed respondents to determine such status for petitioners within 60 days without reference to the criteria, unanimously reversed, on the law, and the petition dismissed, without costs. On this appeal the issues appear to be (1) whether the respondents' staffing criteria for group emergency foster care (GEFC) facilities are rational and reasonable, (2) whether petitioner's emergency care program, while not meeting such standards, can nevertheless qualify as eligible simply on the basis of the papers submitted herein, or was an evidentiary hearing on adequacy necessary, (3) whether the petitioner has standing to challenge the criteria, and (4) whether the City of New York was a necessary party to the proceeding. In reviewing the staffing criteria of respondents, the question is not whether petitioner is furnishing adequate care to the troubled children entrusted to it, or even functioning properly. Rather, it is whether the standards set by respondents after some prior study, are arbitrary and capricious under CPLR article 78 principles. There is no doubt that pursuant to subdivision (2) of section 398-a of the Social Services Law, respondents can and must develop "standards of payment for care provided foster children * * * includ[ing] the care required to be provided". The classification of types of foster care is part of the legislative delegation of authority to respondents. There is a strong presumption that the respondents rate-setting process including the staffing criteria is "reasonable and just". *(People ex rel. Knoblauch v Warden of Jail of Fourth Dist. Magistrates' Ct.,* 216 NY 154 162.) Only a "compelling showing" justifies vacating the criteria and rates set here *(Matter of Catholic Med. Center of Brooklyn & Queens v Department of Health of State of N.Y.,* 48 NY2d 967, a hospital rate case). In the instant proceeding, the petitioner has made no such showing and the order appealed from (and the prior order) should be reversed and the petition dismissed. Certainly, it has not overcome the presumption that respondents acted within the legislative intent *(City of New York v Interborough R.T. Co.,* 257 NY 20, 38-39). One cannot say the respondents acted arbitrarily or capriciously, inasmuch as respondents may consider many factors in setting criteria for classification of homes other than petitioner's supposedly special circumstances *(Matter of St. Luke's Hosp. Center v Ingraham,* 52 AD2d 181, 183, affd 43 NY2d 771). It is necessary to establish criteria and this cannot be done on an individual basis. Handling emergencies in a short-term group foster home requires higher staffing. Flat rates or criteria do

not violate equal protection, and anything else would be quite expensive to administer *(Matter of Bernstein v Toia,* 43 NY2d 437, 446). These criteria need not be scientifically calculated *(Noble State Bank v Haskell,* 219 US 104, 110). One should not be permitted to "second-guess" the respondents. Although reasonable men may differ in their opinions on this matter of criteria or rates, a court need only find a rational basis in this area of social welfare *(Dandridge v Williams,* 397 US 471, 485, 487). The fact that respondents pay more to the New York City Department of Social Services — Special Services to Children (SSC) operated homes is no reason to invalidate the criteria by which they classify homes and ultimately set the reimbursement rates for the city on petitioner's homes. The city and petitioner's homes are in different categories and have different operational problems and costs. Petitioner is a charitable agency and can solicit contributions to cover its deficits arising from the State's "inadequate" rates (Executive Law, art 7-A). In the circumstances before us, there is no need to consider petitioner's standing to challenge the criteria in question. Petitioner's contract is with the city (SSC). Nothing prevents the SSC from paying more than the State rate, except general fiscal restraints *(New York State Council of Voluntary Child Care Agencies v Blum* 105 Misc 2d 154, 157). This raises the issue of the city's participation in the article 78 proceeding as a necessary party (CPLR 1001, subd [a]). Obviously, a portion of the relief petitioner wanted in its notice and petition, prompt payment for its services, could not have been granted without the city's presence. It does actually pay the petitioner. Respondents also raise failure to exhaust administrative remedies. However, there is no such defense among the listed nine in respondents' answer. There appears to be no requirement that the State reimburse the full cost for foster care provided by voluntary agencies. The rates in general are set lower than these costs to provide an incentive for reducing such costs and avoiding overutilization of agency foster care. Lines must be drawn somewhere, and the fact that petitioner would place them in a different location does not make respondents' criteria or rates, or both, irrational. Concur — Murphy, P.J., Kupferman, Birns, Sandler and Fein, JJ.