■ BROOKLYN HOSPITAL, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants. — In an action for declaratory and injunctive relief, defendants appeal from a judgment of the Supreme Court, Kings County (Dowd, J.), dated November 10, 1982, which granted plaintiffs motion for summary judgment and, *inter alia,* declared regulation 10 NYCRR 86-1.21 (m) (3) (ii) (*d*) to be invalid. Judgment reversed, on the law, with costs, plaintiff's motion denied, and summary judgment granted in favor of defendants declaring the regulation in question to be valid. The issue in the instant case concerns the validity of 10 NYCRR 86-1.21 (m) (3) (ii) (*d*). This regulation was promulgated by the State Commissioner of Health and adopted by the State Hospital Review and Planning Council to carry out the provisions of third subdivision 4 of section 2807 of the Public Health Law,[*] which reads in pertinent part as follows: "The commissioner of health shall

---

[*] The version of section 2807 of the Public Health Law containing third subdivision 4 at issue in the instant case has since been superseded by new sections 2807 and 2807-a, which establish a new system for calculating reimbursement rates for hospital and health-related services (L 1982, chs 536, 537, 538). The instant action is not moot, however, due to the fact that the relief sought by plaintiff includes reimbursement of the moneys it would have received for the rate period commencing January 1, 1981, had the challenged regulation not been in effect.

include in costs allocated to in-patient services the net loss incurred by a voluntary hospital as defined by the commissioner in rendering ambulatory and emergency services, when such net loss is adjusted by any operating surplus attributable to all other hospital services * * * Net loss from the rendering of ambulatory and emergency services shall mean the difference if any, between the direct and indirect costs which are reasonably related to audited costs of efficient production of preadmission, out-patient, ambulatory, post-discharge and emergency services * * * and the audited revenues received for such services. The commissioner shall have the power in determining such loss to audit such revenues with respect to determining whether revenue collection and patient charges are reasonably related to the efficient production of revenues and the minimization of net loss, and to disallow any portion of such loss which such audit determines not to have been reasonably related to the provision of ambulatory and emergency services". The purpose of this statute was to provide financial relief to plaintiff and other similarly situated voluntary hospitals for the losses they incur in providing emergency room and clinic outpatient services to lower income patients who lack health insurance or other means to pay for such services (see Governor's Memorandum, McKinney's Session Laws of NY, 1974, pp 2137-2138). Pursuant to third subdivision 4 of section 2807 of the Public Health Law, a partial subsidy for the deficits experienced by voluntary hospitals in providing unreimbursed outpatient services was factored into the basic reimbursement rates applicable to third-party payors of hospital and health-related services, which generally include only inpatient services. The statute defined the "[n]et loss from the rendering of ambulatory and emergency services" to exclude the costs and revenues associated with such outpatient services which the State commissioner, after conducting the appropriate audits, determined were "not * * * reasonably related to the provision of ambulatory and emergency services". In order to arrive at the amount of the subsidy for a hospital's outpatient service deficit, third subdivision 4 of section 2807 of the Public Health Law provided that the "net loss" resulting from ambulatory and emergency services was to be "adjusted by any operating surplus attributable to all other hospital services", referring to inpatient and related services. The statute contained no definition of the components of the calculation of that "operating surplus". However, the regulations promulgated to implement the statute defined the categories of expenses and revenues to be excluded from the "operating surplus" (10 NYCRR 86-1.21 [m] [3] [ii]). The challenged regulation, 10 NYCRR 86-1.21 (m) (3) (ii) (*d*), excluded from the "operating surplus" attributable to inpatient and other hospital services "expenses which are not reasonably related to the efficient production of such service in accordance with the reimbursement formula approved by the Commissioner of Health and as computed by the article IX-C corporation". The expenses disallowed pursuant to the regulation (10 NYCRR 86-1.21 [m] [3] [ii] [*d*]) constitute the costs of inefficient inpatient services, which are excluded from the basic reimbursement rate formulas for such inpatient services pursuant to cost ceilings for groups of hospitals with comparable characteristics (see 10 NYCRR 86-1.13, 86-1.14). The ceilings on allowable costs of inpatient services were developed to implement the provisions of section 4 of chapter 957 of the Laws of 1969, which amended subdivision 3 of section 2807 of the Public Health Law to require the commissioner to certify "that the proposed rate schedules for payments for hospital and health-related service are reasonably related to the costs of efficient production of such service". Thus, the definition of the "operating surplus attributable to all other hospital services" contained in 10 NYCRR 86-1.21 (m) (3) included an adjustment for the costs of inefficient inpatient services, in addition to the disallowance of the losses attributable to inefficient outpatient services incor-

porated in the definition of "net loss" contained in the third subdivision 4 of section 2807 of the Public Health Law. By virtue of the exclusion of the expenses of inefficient inpatient services, the "operating surplus" used to adjust the "net loss" attributable to ambulatory and emergency services was increased. This resulted in a decrease in the amount resulting from unreimbursed outpatient services received by plaintiff and other voluntary hospitals pursuant to third subdivision 4 of section 2807 of the Public Health Law. We conclude that 10 NYCRR 86-1.21 (m) (3) (ii) (*d*) constituted a valid and rational exercise of discretion by the State Commissioner of Health. Therefore, summary judgment should be granted in favor of defendants pursuant to CPLR 3212 (subd [b]). The challenged regulation did not impermissibly conflict with the language and intent of third subdivision 4 of section 2807 of the Public Health Law, which did not define the term "any operating surplus attributable to all other hospital services". In the absence of a statutory definition of such a technical term, the delineation of the specific categories of revenues and expenses to be excluded from the operating surplus is a matter properly entrusted to the discretion of the State Commissioner of Health, who possesses expertise in this complex area of regulation of the reimbursement rates applicable to the third-party payors of hospital services (cf. *Matter of Presbyterian Hosp. v Ingraham,* 39 NY2d 867, 869). The determination of the commissioner to exclude the costs of inefficient inpatient services from the calculation of the operating surplus should not be overturned, as it has a rational basis and is not arbitrary and capricious (see *Matter of Jewish Mem. Hosp. v Whalen,* 47 NY2d 331, 341; *Matter of Presbyterian Hosp. v Ingraham, supra,* p 869; *Matter of Sullivan County Harness Racing Assn. v Glasser,* 30 NY2d 269, 277-278). The challenged regulation represented a valid effort by the commissioner to implement the mandate of section 2807 of the Public Health Law to insure that the reimbursement rates for hospital services incorporate mechanisms to control the increasing costs of those services. The commissioner properly determined that it would be inconsistent to exclude costs attributable to inefficient inpatient services in the calculation of the basic reimbursement rates, but to allow such costs in the formula to arrive at the subsidy added to those rates to relieve hospitals from a portion of their losses attributable to outpatient services. The outpatient deficit subsidy was not intended to become a mechanism to allow a hospital to receive credit for the costs of inefficient inpatient operations, which were otherwise excluded from the calculation of reimbursement rates. Mollen, P. J., Damiani, Mangano and Gulotta, JJ., concur.