■ In the Matter of EVA PEARLSTEIN, Doing Business as ST. ALBANS NURSING HOME, Petitioner, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Commissioner of Health which directed that a revised Medicaid reimbursement rate be promulgated requiring petitioner to pay the sum of $10,898 to the Department of Health. ¶ Petitioner was a residential health care facility operating in the Borough of Queens, City of New York, from 1971 to 1975. In October, 1975, the Department of Health conducted an audit of petitioner's financial reports for the years 1971, 1972 and 1973. This audit resulted in reductions in petitioner's per diem Medicaid reimbursement rates for the years in question and concluded with a statement of overpayments owed by petitioner to the department. ¶ Petitioner protested the audit adjustments and requested a due process hearing pursuant to 10 NYCRR 86-2.7 (f) before the department. ¶ This request was denied. Petitioner then commenced a CPLR article 78 proceeding, inter alia, to annul the department's determination reducing its reimbursement rates. On May 8, 1977, Special Term annulled the department's determination and remitted the matter for a hearing de novo. Hearings were subsequently held in November, 1978 and February, 1979, which resulted in findings ultimately adopted by respondent Commissioner of the Department of Health by order dated December 24, 1982. He directed that petitioner's rates be revised in accordance therewith and that petitioner refund to the department the sum of $10,898 in overpayments. Petitioner instituted the instant CPLR article 78 proceeding to review that determination. ¶ Petitioner's first contention is that res judicata barred respondents from ordering a revision of its reimbursement rates. It points to Special Term's decision of May 8, 1977 which, in determining petitioner's original CPLR article 78 proceeding, annulled the department's revised reimbursement rates and ordered a hearing de novo on certain enumerated rate issues. Petitioner concludes that the issue of its reimbursement rates was determined at that time and should not have been considered again. This contention is erroneous. Special Term never reached the merits of the original CPLR article 78 petition, but merely annulled petitioner's provisional reimbursement rates because petitioner had been impermissibly denied a hearing as to them before the department (10 NYCRR 86-2.7 [f]). The instant proceeding raises substantive reimbursement rate issues not determined by Special Term. Accordingly, respondent commissioner is not precluded under the doctrine of res judicata on the issues presented here. ¶ Petitioner's second contention is that the department is barred from recouping alleged Medicaid overpayments by the applicable six-year Statute of Limitations (CPLR 213) or by laches. However, this issue need not be reached at this time. There is no demand in the petition for relief from that part of respondent commissioner's order stating that petitioner must remit $10,898 in Medicaid overpayments. Moreover, there is nothing to indicate that respondent commissioner has taken steps towards an administrative recoupment or the instigation of an action at law to recover this money.

112 Misc 2d 429).

Hence, this issue is not properly before us as part of the instant proceeding. ¶ Petitioner also contends that respondent commissioner erred in its manner of computing the depreciation of the buildings which housed the facility. Respondent commissioner included within petitioner's rates a factor for depreciation of the buildings on the basis of a 25-year useful life. In actual fact, however, petitioner ceased operations in 1975 and withdrew from the program. Thereafter, the structure was demolished. Petitioner argues that the depreciation rate should be readjusted to reflect only the 51-month actual life of the building in the Medicaid program. Petitioner supports this by referring to Federal Medicaid regulations which reimburse on the basis of actual cost determined retroactively (42 CFR 405.405). However, as was pointed out in *Matter of Beekman-Downtown Hosp. v Whalen* (44 NY2d 124, 128), the rationale for Medicaid rates is based upon a prospective calculation of reimbursement rates as an incentive to control costs. Retroactive adjustments to depreciation based upon voluntary demolition of the asset upon withdrawal from the Medicaid program would be totally inconsistent with the foregoing rationale. Accordingly, we hold that respondent commissioner was correct in computing the depreciation of petitioner's building using a 25-year period. ¶ Petitioner additionally objects to the manner in which respondent commissioner calculated its reimbursement rate ceiling by grouping petitioner with much larger facilities (10 NYCRR 86-1.14 [a]). Specifically, petitioner takes issue with the fact that in 1975, it was placed in a grouping with facilities having 1 to 200 beds, although petitioner had only 35 beds. It contends that it should have been grouped with facilities having 1 to 49 beds as it had been in previous years. This contention lacks merit. The record reveals that in 1975, petitioner for the first time appeared on a list of facilities having a significant operating deficiency (SOD). Since there were no facilities in the 1 to 49 bed grouping on the SOD list, petitioner was placed in the much larger grouping of 1 to 200 bed facilities so that its rate could be calculated with other facilities on the SOD list. Placing a facility in a grouping with others similarly situated if another specific group has too few facilities to allow meaningful comparison is permissible under 10 NYCRR 86-1.13 (b) when it constitutes "merely the prudent application of statistical method" (*Matter of Broadacres Skilled Nursing Facility v Ingraham*, 51 AD2d 243, 245). Respondent commissioner's action in so grouping petitioner was clearly acceptable practice here. ¶ More persuasive, however, is petitioner's contention that the determination of its 1973 reimbursement rate is not supported by substantial evidence. Petitioner points out that for the year 1973, it had applied for and received an exception to the 6% ceiling imposed on all revenues in excess of those of the prior year, as mandated by the Federal Cost of Living Council's Economic Stabilization Program (36 Fed Reg 20139; see *Matter of St. Luke's Hosp. Center v Ingraham*, 52 AD2d 181, affd 43 NY2d 771). Despite this, respondent commissioner limited petitioner's 1973 reimbursement rate to the prescribed 6% ceiling, having somehow determined that the rate would be higher using the 6% ceiling than the rate accorded to petitioner by its exception. We cannot agree. It would seem logically impossible that petitioner's 1973 reimbursement rate, calculated with its hardship exception to the 6% ceiling, could be less than the rate calculated with the 6% ceiling. This is especially true since the record shows that petitioner actually experienced a cost increase of 16.8% in 1973 and this is the percentage which respondent commissioner applied in its calculations of petitioner's 1973 rate before it amended them by imposing the 6% ceiling. Testimony of the department's chief health care fiscal analyst at the hearing did not satisfactorily explain this anomaly. Accordingly, we conclude that respondents have failed to show support in the record or a rational basis for their determination and we remit for further hearings as to the

methodology used in determining the 1973 rate. ¶ We have examined petitioner's remaining objections to respondents' determination and find them to be without merit. ¶ Determination annulled, without costs, and matter remitted to the Commissioner of the Department of Health for further hearings as to the determination of petitioner's 1973 Medicaid reimbursement rate. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.