In the Matter of ARNOT-OGDEN MEMORIAL HOSPITAL, Appellant, v BLUE CROSS OF CENTRAL NEW YORK, INC., et al., Respondents. (And Another Related Proceeding.)

Third Department, July 3, 1986

## APPEARANCES OF COUNSEL

*Sayles, Evans, Brayton, Palmer & Tifft (Edward B. Hoffman* of counsel), for appellant.

*Hinman, Straub, Pigors & Manning, P. C. (Joseph Boochever* of counsel), for Blue Cross of Central New York, Inc., respondent.

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for David M. Axelrod and another, respondents.

## OPINION OF THE COURT

LEVINE, J.

Petitioner operates a general hospital in the City of Elmira, Chemung County. These appeals involve the reimbursement rates, as determined by respondent Commissioner of Health (the Commissioner), for treatment at its facility of patients insured by respondent Blue Cross of Central New York, Inc. (Blue Cross) for the years 1975 and 1976. Under the applicable statute, the Cost Control Law of 1969 (Public Health Law § 2807, as amended by L 1969, ch 957), and the regulations promulgated pursuant thereto (10 NYCRR part 86), hospitalization insurance reimbursement rates are determined prospectively on the basis of the individual hospital's actual annual operating costs (consistent with the average costs of similar hospitals) two years preceding the rate year in question (the base year), increased by a trend factor to reflect inflation. The rate-setting procedures are described in detail in a previous appeal in these proceedings (92 AD2d 629). Blue Cross submits a proposed reimbursement formula to the Commissioner for certification. Once the formula is reviewed and certified, Blue Cross computes the hospital's reimbursement rate by applying the formula to the hospital's relevant cost data. The rate arrived at is then submitted to the Commissioner for certifica-

tion, after which it is submitted to the Superintendent of Insurance for approval. The substance of the foregoing methodology is incorporated in the operating agreement between Blue Cross and the individual hospital, which is also subject to approval by the Commissioner. The operating agreement and the regulations (10 NYCRR former 86.17) also provide mechanisms whereby the hospital may apply for prospective revisions in its certified rate, but any such revision is ineffective until again certified by the Commissioner.

In 1977, petitioner sought upward revision of its 1975 and 1976 reimbursement rates to reflect, *inter alia,* the following increased costs actually incurred in those years: (1) in 1976, petitioner incurred an increase in its malpractice insurance premiums of more than $500,000 over the $61,000 it paid for such insurance in 1974; although the Commissioner applied a trend factor of 350% to 1974 hospital malpractice insurance costs in fixing 1976 rates, this still left petitioner with a deficit of some $300,000 in unreimbursed malpractice insurance costs; (2) in 1975, the trend factors applied to petitioner's premiums for its employees' health insurance and for its utility expenses were insufficient to make up the actual increase in those operating expenses of some $88,000 and $104,000, respectively, over 1973; and (3) the 1975 rates failed adequately to reimburse petitioner for its increases over 1973 in the costs of newly expanded programs in patient kidney dialysis, cardiac surgery and neonatal intensive care.

Blue Cross recommended approval of petitioner's application to take into account the extraordinary rise in petitioner's malpractice insurance premiums, but opposed its other requests. The Commissioner rejected petitioner's applications in their entirety. After exhausting its administrative appeals, which were denied without a hearing, petitioner brought the instant CPLR article 78 proceedings to review the Commissioner's determinations and breach of contract actions against Blue Cross under their 1975 and 1976 operating agreements. On the previous appeal (92 AD2d 629, *supra),* this court held that, there being no claim that Blue Cross had failed to reimburse petitioner at the certified rate in accordance with the insurer's obligation under the parties' agreement and the Cost Control Law, no cause of action lay for breach of contract. Since the gravamen of all of petitioner's claims was directed at the validity of the administrative determinations, the actions against Blue Cross were converted to CPLR article 78 proceedings. These appeals followed Special Term's subse-

quent dismissal of all of petitioner's causes of action as legally insufficient (130 Misc 2d 306).

We affirm. The Cost Control Law has been repeatedly construed as a program of health cost containment through the means of establishing a system of reimbursement based upon prospective, rather than actual, costs *(see, Matter of Westhampton Nursing Home v Whalen,* 60 NY2d 711; *Matter of Beekman-Downtown Hosp. v Whalen,* 44 NY2d 124, 128; *Matter of Pearlstein v Axelrod,* 103 AD2d 921, 922; *Hurlbut v Whalen,* 58 AD2d 311, 319, *lv denied* 43 NY2d 643; *Matter of St. Luke's Hosp. Center v Ingraham,* 52 AD2d 181, 183, *affd* 43 NY2d 771). It is not seriously contended that the rates under review were not determined in conformity with the applicable regulations, which have also repeatedly been found to be consistent with the Cost Control Law *(see, supra).* Petitioner's principal argument is that since its malpractice insurance and employee health insurance rates and utility rates were all determined by State regulatory agencies, these expenses were "reasonably related to the costs of efficient production of * * * service" (Public Health Law § 2807 former [3]). These costs should, therefore, have been reimbursed under the Cost Control Law's quoted, ultimate standard. As is readily apparent, however, to accept petitioner's position on all of the highly significant components of a health provider's operating expenses that are fixed or regulated by various State or local governmental agencies would be to "emasculate the effect of the general proscription against [retroactive] rate adjustments" *(Hurlbut v Whalen, supra,* p 319). There is no more compelling reason to depart here from the basic statutory method of prospective rate fixing than in other cases where apparently valid costs were incurred which proved to be higher than those that were projected in setting the reimbursement rate *(see, Matter of Westhampton Nursing Home v Whalen, supra; Matter of Pearlstein v Axelrod, supra).* In reaching this conclusion, we reject petitioner's further argument that the temporary legislative suspension in 1976 of the 60-day notice rule of Public Health Law § 2807 (4) (L 1976, ch 76) eliminated the prohibition against retroactive rate fixing for that year for all purposes *(see, Matter of Westhampton Nursing Home v Whalen, supra).*

Even assuming that the Commissioner has the authority to make retroactive adjustments to relieve hardships or to cover

gross inequities *(see, Matter of St. Luke's Hosp. Center v Ingraham, supra,* p 185), such circumstances have not been pleaded here *(supra)*. Petitioner's contention that reimbursement on the basis of actual, reasonable costs is constitutionally required is similarly without merit *(see, Matter of Sigety v Ingraham,* 29 NY2d 110, 115). The trend factor of 350% for malpractice insurance was rationally arrived at through, *inter alia,* cost data furnished by the Hospital Association of New York State. Petitioner has not demonstrated more than that the general formula for reimbursement in this respect did not work as well for it as, perhaps, for other members of the entire group to which it was applied, which is insufficient to establish that the determination was arbitrary or capricious *(see, Matter of Presbyterian Hosp. v Ingraham,* 48 AD2d 491, 496, *affd* 39 NY2d 867).

It is true that the regulations then in effect permitted a departure from the trended actual costs of the earlier base year to take into account expansion of services or additional programs such as the dialysis, cardiac surgery and neonatal intensive care program described in petitioner's application for revision of its 1975 rate (10 NYCRR former 86.17 [a] [3], [4]). However, the authorization specifically only extends to "applications for *prospective* revisions" (10 NYCRR former 86.17 [a]; emphasis supplied). Moreover, the operating agreement between Blue Cross and petitioner stipulated that, regarding requests for rate revisions on the basis of an expansion of service, petitioner was required to advise Blue Cross in advance of any such expansion. Concededly, the first notice of these expanded programs was not given to Blue Cross or the Commissioner until petitioner's 1977 application for retroactive revision of its 1975 rate. Consequently, there was a reasonable basis in law and in fact for the Commissioner to deny these revisions *(see, Matter of Samaritan Hosp. v Axelrod,* 107 AD2d 911, 914, *appeal dismissed* 65 NY2d 636).

We have considered petitioner's remaining contentions and find them equally without merit. Accordingly, Special Term properly dismissed these proceedings.

MAHONEY, P. J., MAIN, MIKOLL and YESAWICH, JR., JJ., concur.

Judgments affirmed, without costs.