In the Matter of MARY IMOGENE BASSETT HOSPITAL, Appellant, v DAVID AXELROD, as Commissioner of the Department of Health of the State of New York, et al., Respondents.

Third Department, April 23, 1987

## APPEARANCES OF COUNSEL

*Kernan & Kernan, P. C. (Leighton R. Burns* and *Steven A. Smith* of counsel), for appellant.

*Robert Abrams, Attorney-General (Alan W. Rubenstein* and *William J. Kogan* of counsel), for respondents.

## OPINION OF THE COURT

YESAWICH, JR., J.

Petitioner, a participant in the Medicaid program, is a not-for-profit corporation, reimbursed for services rendered to eligible Medicaid patients at rates determined by respondent Commissioner of Health, pursuant to Public Health Law § 2807. These rates are computed on the basis of actual costs incurred in the year two years prior to the reimbursement year (also referred to as the base year), and are trended forward to account for various factors, including inflation.

At issue are 10 NYCRR former 86-1.17 (a) (3) and (4), which invested respondents with authority to grant prospective revisions of certified reimbursement rates for, *inter alia:*

"(3) significant increases in the overall operating costs of a medical facility resulting from the implementation of additional programs, staff or services specifically mandated for the facility by the commissioner;

"(4) significant changes or increases in the overall operating costs of a medical facility resulting from capital renovation, expansion, replacement or the inclusion of new programs, staff or services approved for the medical facility by the commissioner" (10 NYCRR former 86-1.17 [a]).*

In essence, petitioner claims it had incurred $802,269 in costs associated with additional programs, staff, capital renovation, expansion and equipment replacement "all of which fall within the express language" of 10 NYCRR former 86-1.17 (a) (3) and/or (4); that these increased costs were directly related to new and expanded ancillary services not reflected in petitioner's base year, 1980, costs; and that they translated into $108,259 in actual lost Medicaid reimbursement in the rate year 1982 for which petitioner sought payment.

Petitioner's application to achieve a revision of its 1982 Medicaid rate, addressed to the Bureau of Hospital Reimbursement, was denied because the expenditures were not for "new" services but to expand preexisting services, and as such, were calculated and accounted for in the base year trend factor. At the administrative hearing which followed, an

---

* This regulation has since been amended. The current version, filed March 12, 1985, appears at 10 NYCRR 86-1.17.

Administrative Law Judge concluded that there was no dispute as to the underlying facts, that only an issue of law was presented, namely, an interpretation of the regulations, and, hence, that he was not empowered to grant the relief requested.

Special Term dismissed petitioner's CPLR article 78 proceeding, brought to annul respondents' determination of petitioner's 1982 Medicaid reimbursement rate and to secure related relief, on three grounds: (1) that petitioner's rate appeal was neither based on "significant" changes in its overall operating costs, nor (2) due to the implementation of Commissioner-"mandated" expenditures, and (3) for a computation impropriety, i.e., petitioner's attempt to have the total cost rather than merely the incremental additional cost of replacement equipment added to its base year costs. In sum, Special Term found that petitioner failed to carry its burden of showing that respondents' computation of petitioner's reimbursement rate was irrational.

At the outset it is to be borne in mind that the rate-setting methodology employed by respondents, one based on prospective, not actual, costs, reflects the Legislature's unequivocal intention of curbing and containing spiraling health care costs. As such, deviations from this statutory formula, though countenanced, are strictly construed. Consequently, a hospital's entitlement to an increased reimbursement rate is not automatic even in those instances where valid costs have been incurred which exceed those projected when the reimbursement rate was established (see, Matter of Arnot-Ogden Mem. Hosp. v Blue Cross of Cent. N. Y., 118 AD2d 185, lv denied 68 NY2d 611). To warrant exceptional treatment, petitioner was obliged to demonstrate that its particular circumstances met the requirements of 10 NYCRR former 86-1.17 (a) (3) or (4); whether it did so depends upon the meaning to be given to those paragraphs.

To come within paragraph (3), petitioner was required to show that its purportedly uncompensated costs stemmed from "services specifically *mandated for the facility by the commissioner*" (10 NYCRR former 86-1.17 [a] [3]; emphasis supplied). There is no evidence of any "mandate" from the Commissioner insisting that petitioner incur any of the added costs it assumed. And to the extent that petitioner relies on respondent Department of Health's letters authorizing it to purchase additional medical equipment costing more than a certain amount, respondents maintain, and it has not been disputed,

that their consistent and uniform interpretation of this regulation, since its promulgation, has been that Department approval of such facility initiated requests does not constitute a "mandate" by the Commissioner. Furthermore, as the mandate contemplated is to be issued by the Commissioner directly to the hospital concerned, it cannot be said that respondents have given this term an irrational construction; accordingly, respondents' interpretation must be sustained (see, Matter of Cortlandt Nursing Care Center v Whalen, 46 NY2d 979).

Insofar as petitioner's claim is based on paragraph (4) of the regulation, it, too, is lacking in merit. In respondents' view, to be reimbursable under this provision the expenses must, at a minimum, be "new", something more than those generated by a need to accommodate staffing changes and routine updating of equipment. It is their contention that the costs incurred here were not occasioned by entirely new ancillary services or a change in facility size, for which appeals are said to be routinely granted, but simply to enhance or expand preexisting services, and that incremental changes of this nature are assimilated in the trend factor (10 NYCRR 86-1.15) and the capital cost component of the certified rate (10 NYCRR 86-1.30). As this is not an unreasonable interpretation of the Department's own regulation, we defer to the agency (see, Matter of Tibbets Health Care Facility v Axelrod, 88 AD2d 1051, 1052).

Finally, we note that both paragraphs (3) and (4) speak of an obligation on petitioner's part to not only demonstrate that the costs were mandated by the Commissioner—or that those voluntarily incurred were entirely new and approved by him —but also that they effected a significant increase in petitioner's over-all operating costs, a showing that has not been convincingly made here.

MAHONEY, P. J., KANE, WEISS and LEVINE, JJ., concur.

Judgment affirmed, without costs.