Jasen, J.
The principal question on this appeal is whether the actions of the Thruway Authority in closing service areas between Albany and New York City to charter buses on summer *78 weekends violates the equal protection clause of the Federal and State Constitutions.
Each defendant, a driver of a charter bus, was charged in a separate information with violating section 103.1 of the Thruway Regulations (21 NYCRR 103.1), which provides, in part, that “ No person shall fail, neglect or refuse to comply with any * * sign * * * erected or displayed by the Thruway Authority on the Thruway system”. The signs in question announced that the service areas between Albany and New York City would be closed to charter buses from midnight Friday to midnight Sunday during the heavily traveled summer months. The courts below dismissed the informations herein upon the afore-mentioned constitutional grounds.
At the outset it should be noted that the respondents do not question the Authority’s right to exclude vehicles from an already crowded service area, but instead challenge the actions of the Authority in selecting charter buses as the class of traffic to be excluded. While it is true that the Authority’s actions in selecting charter buses as a class of vehicles to be excluded from using certain facilities is, in one sense, discriminatory, this, in itself, does not sustain a violation of the equal protection clause.
“ Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made.” (Baxstrom v. Herold, 383 U. S. 107, 111.) Nor is the Constitution offended if the classification has some reasonable or rational basis. (Dandridge v. Williams, 397 U. S. 471, 485; see also, Matter of Stracquadanio v. Department of Health, 285 N. Y. 93.) Furthermore, “ [a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.” (McGowan v. Maryland, 366 U. S. 420, 426.)
In promulgating the regulation in question, the Authority considered the following:
‘11. Large groups of charter buses arrive simultaneously as distinguished from scheduled buses which travel alone.
2. The charter bus operators are unwilling to give advance notice of their arrival. The arrival time of a scheduled bus is known to the restaurant operator.
3. The charter buses are not equipped with rest rooms. Scheduled buses have rest rooms and very few of them stop.
*79 4. Buses carry more passengers than the passenger cars which would occupy the same parking area.
5. Charter buses on summer weekends generate the crowds that create the hazardous conditions.
6. Buses and military convoys which have been notified well in advance that service areas are unavailable are able to plan in advance whereas unanticipated closings because of immediate unexpected crowds create greater problems than preannounced closing to certain traffic.”
Clearly, based on the considerations set forth, there is a reasonable basis for the exclusion of charter buses from the service areas.
Although it would seem preferable to have these facilities equally available to all Thruway users, there is no violation of equal protection where the Authority, due to the overcrowding of facilities, restricted the use of those areas in order to protect the users of the facilities from injury and inconvenience. That other methods may have been used[1] does not make the method used an unreasonable one. The charter buses brought heavy concentrations of people to the service areas and instantaneously created crowded, and sometimes dangerous, conditions. The charter bus companies were admittedly forewarned so as to allow them to make alternative plans. Thus, the actions of the Thruway Authority do not reach the level necessary to make them unconstitutional.
Moreover, the Thruway Authority has an affirmative duty to take action to alleviate dangerous conditions that it could foresee. In Rindfleisch v. State of New York (27 N Y 2d 762), the Thruway was held liable for not closing a portion of the roadway made ■ dangerous by smoke from a recurring fire. Similarly, here the Authority was faced with potential liabilities for damages arising out of the failure to take action to alleviate recurring overcrowding of certain facilities. Thus, the action taken is both reasonable and consistent with its responsibilities.
Although it has no bearing on the constitutional issue raised, it should be noted that, since this case was originally tried, the Authority has constructed separate charter bus facilities in the *80 area in question. (See 20th Annual Report of New York State Thruway Authority, 1969, pp. 18-19.)
Respondent also maintains that the resolution closing the service area is invalid for lack of filing with the Secretary of State pursuant to the requirements of section 8 of article IV" of the New York State Constitution. There are, however, on file regulations allowing the Thruway Authority to close any part of the Thruway system to the public if dangerous conditions evolve[2] and prohibiting any person from refusing to obey any sign or device erected by the Thruway Authority. Consequently, these parent or general regulations constitute sufficient authority for the director’s actions, and. a further filing is not required. (See People v. O’Malley, 11 N Y 2d 943; People v. Fogerty, 18 N Y 2d 664.)
The order of the County Court should be reversed, the informations reinstated, and the case remitted to the County Court, Ulster County.
Chief Judge Fuld and Judges Scileppi, Bergan* Breitel and Gibson concur; Judge Burke taking no part.
Order reversed, etc.

. Such as simply closing the facilities to all users of the Thruway when they became overcrowded.

. Overcrowding is specifically mentioned as a condition which may properly lead to closing.