In the Matter of Sᴜɴʀɪsᴇ Mᴀɴᴏʀ Nᴜʀsɪɴɢ Hᴏᴍᴇ, Appellant, v Dᴀᴠɪᴅ Axᴇʟʀᴏᴅ, as Commissioner of the Department of Health of the State of New York, et al., Respondents.

Third Department, February 25, 1988

### APPEARANCES OF COUNSEL

*Fink, Weinberger, Fredman, Berman & Lowell (Stephen E. Powers* of counsel), for appellant.

*Robert Abrams, Attorney-General (Clifford A. Royael* of counsel), for respondents.

### OPINION OF THE COURT

KANE, J. P.

Petitioner, a duly licensed skilled nursing facility, participated in the Medicaid program (42 USC § 1396 *et seq.)* and as such was entitled to have a portion of the services it rendered to its medically indigent elderly patients reimbursed at a rate computed by respondents pursuant to Public Health Law § 2807 (3). The instant proceeding concerns the amount of reimbursement that the State Department of Health (hereinafter DOH) calculated petitioner as being entitled to for the years 1981 through 1984.

Subsequent to the determination of its reimbursement rate

for each of the years in question, petitioner filed four separate appeals, one for each year. The appeals requested readjustment of the rates due to increased labor costs for additional wages and fringe benefits arising from collective bargaining agreements with its unionized employees. A readjustment was also sought due to wage and fringe benefit increases to its nonunion employees. Among the newly granted benefits for both union and nonunion employees were pension benefits, commencing in 1981.

The rate appeals were reviewed together by DOH pursuant to the first-stage appeal process set forth in 10 NYCRR 86-2.14 (b). DOH issued a determination agreeing to revise petitioner's reimbursement rates to reflect the increased labor costs attributable to some, but not all, of the items submitted by petitioner. The value of the adjustments due petitioner was calculated to be approximately $230,000. The adjustments that DOH denied, and which are the subject of the instant proceeding, were those items concerning pension contributions for nonunion employees and newly unionized registered nurses and cooks. The denial was based on DOH's determination that these items represented "new benefits" which, according to DOH "policy", were "parity" items and as such would not be considered for reimbursement until such time as they became part of a base year cost calculation used to set a prospective rate.*

Thereafter, petitioner, pursuant to 10 NYCRR 86-2.14 (b) (1), filed a second-stage appeal regarding the parity items denied reimbursement by DOH. At this level, a hearing is held if it is determined that there are any factual issues on the rate appeal. DOH notified petitioner that the parity item guidelines were being replaced by new guidelines and that DOH would perform a complete new review of all of the appeals. However, DOH then informed petitioner that under the new methodology, petitioner would only be entitled to an upward adjustment of $150,000 instead of the approximately $230,000 originally approved under the prior parity methodology. Nev-

---

* DOH's methodology for computing a facility's reimbursement rate consists of using the actual operating costs experienced by the facility in a previous year (the base year) and, if these base year costs meet certain DOH criteria, they are considered allowable. DOH then arrives at a prospective rate by increasing allowable base year costs by a "trend factor" based on general economic indicators to account for inflation between the base year and the ensuing "rate year". After adding on a capital cost factor, the resulting final figure is the facility's prospective reimbursement rate.

ertheless, since the higher rates had already been approved, DOH determined it inappropriate to decrease them. The second-stage appeal therefore resulted in a simple reaffirmation of the first-stage denial and it was determined that no hearing was required on the ground that the first-stage appeals had been denied pursuant to generally applicable rate-setting policies. The instant CPLR article 78 proceeding ensued and resulted in a dismissal of the petition by Supreme Court, from which petitioner currently appeals.

In our view, petitioner is correct in its assertion that DOH's denial of reimbursement for parity items was based on a policy that should have been published as a regulation and filed with the Secretary of State in accordance with NY Constitution, article IV, § 8 (see, Executive Law §§ 101-a, 102; State Administrative Procedure Act § 202). A guideline established by an agency is considered to be a rule or regulation requiring filing if it is "a fixed, general principle to be applied by [the] agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (Matter of Roman Catholic Diocese v New York State Dept. of Health, 66 NY2d 948, 951; see, Matter of Sturman v Ingraham, 52 AD2d 882). In the instant case, DOH itself stated that the exclusion of new categories of labor expenses (i.e., parity items) was a "policy" and that it constituted a "review mechanism". Further, in the second-stage appeal, an administrative hearing was found not to be required since DOH's initial denial was based on "policy reasons" and therefore there were no issues of fact. The denial of parity items was thus based on a fixed and rigid policy with no recognition of the particular facts of an individual's case (see, Long Is. Coll. Hosp. v Whalen, 68 AD2d 274, 276) and therefore must first have been published as a rule or regulation by DOH to be effective.

Supreme Court determined that since 10 NYCRR 86-2.12 (b) states that respondent Commissioner of Health "may, in his discretion, either certify new rates or adjust subsequent rates", DOH was not required to file the parity items policy. The court reasoned that since the regulation allowed for the exercise of discretion by the Commissioner, no further filing of the specific exercise of such discretion was required. We reject this analysis. Although the court relied on People v Ditniak (28 NY2d 74) to support its conclusion, we do not find that case persuasive. In Ditniak, the Court of Appeals determined that the authority for the challenged agency actions existed

because there were already on file regulations allowing such actions. Thus, the agency was taking action based upon a properly filed regulation specifically authorizing the disputed actions. Similarly, in *Matter of Sisters of Charity Hosp. v Axelrod* (89 AD2d 821, *affd* 59 NY2d 872), which respondents cite for support, the decision of the Commissioner was based on the particular facts of the case and there is no indication that a fixed guideline or policy was applied to determine the outcome of that case.

Furthermore, although 10 NYCRR 86-2.12 (b) allows the Commissioner to exercise his discretion on a case-by-case basis, it is clear that this is not what occurred in the instant case. Therefore, since there is no evidence of any factual review of petitioner's case, this case should be remitted to DOH so petitioner's application can be considered as to its own particular facts *(see, Matter of Sturman v Ingraham,* 52 AD2d 882, 885, *supra).*

Turning to petitioner's remaining arguments, we reject its claim that since the increased costs incurred by it during the 1981 to 1984 period were not shown to be unreasonable, it must be reimbursed for those costs. For the years 1981 and 1982, rates were required to be "reasonably related to the costs of efficient production" (Public Health Law § 2807 [former (3)]), and rates for 1983 and 1984 were required to be "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" (Public Health Law § 2807 [3]). A facility's prospective Medicaid rate does not have to reflect the actual costs incurred by it *(see, Matter of Arnot-Ogden Mem. Hosp. v Blue Cross,* 118 AD2d 185, 188, *lv denied* 68 NY2d 611). The Commissioner was not required under the statutory mandates to reimburse petitioner for any of its increased labor costs. Therefore, it follows that trend factors which initially complied with those mandates *(see, Matter of Westhampton Nursing Home v Whalen,* 60 NY2d 711, 713), and which were then later revised upward, also do not violate any statutory mandates, regardless of the method employed in reviewing petitioner's appeals. This is especially true given the Commissioner's discretionary power to adjust rates *(see,* 10 NYCRR 86-2.12 [b]).

Petitioner next claims that it was subjected to disparate treatment in that other facilities with similar pension plans already in place are reimbursed for the very same costs denied to petitioner. It is true that an agency may not act in such a way as to result in disparate or inconsistent treatment

of similarly situated parties, and to adopt different standards for similar situations is to act arbitrarily *(Matter of Exxon Corp. v Board of Stds. & Appeals,* 128 AD2d 289, 296). Here, however, DOH ruled as a matter of policy across-the-board that it would not reimburse parity items. Nevertheless, DOH's determination was arbitrary and capricious insofar as it applied an unpublished fixed and rigid policy that predetermined petitioner's application without regard to its merits *(see, Matter of Sturman v Ingraham, supra,* at 883).

Finally, petitioner's argument that DOH acted arbitrarily and capriciously by failing to submit its 1981 rate appeal to a labor cost review panel pursuant to 10 NYCRR 86-2.14 (g) is without merit. On its face, this regulation applies only to labor agreements made between April 1, 1978 and December 31, 1978 (10 NYCRR 86-2.14 [g] [1]). Here, the collective bargaining agreement was entered into in 1981 and therefore the regulation does not apply to petitioner's rate appeals.

WEISS, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment reversed, on the law, without costs, and matter remitted to respondent Commissioner of Health for further proceedings not inconsistent with this court's decision.