*371 OPINION OF THE COURT
Elliott Golden, J.
In this CPLR article 78 proceeding, petitioner seeks to recover the income earned on its "Sinking Fund” and on its "Depreciation Construction Funds” that respondents set off against Medicaid reimbursement due petitioner for the years 1985,1986 and 1987.
Initially, the court will consider the validity of petitioner’s alleged 1985 appeal to the Department of Health, the first step of petitioner’s exhausting its administrative remedies prior to instituting this article 78 proceeding.
Respondents contend that "Petitioner did not timely appeal the calculation of its 1985 capital cost reimbursement” and allege "When petitioner was advised of its 1985 capital cost reimbursement,, it was advised that rate appeals must include a cover letter signed by the operator of the hospital” (see, exhibit 2 dated Jan. 20, 1987, that sets forth the requirements for an appeal, particularly the use of respondents’ HE22 forms for appeal; see also, 10 NYCRR 86-1.17 [c] for the requirements of an appeal).
Petitioner did not follow the formal route for its 1985 appeal. Instead petitioner’s accountants (Ernst & Whinney) (not an "operator or chief executive officer”) set forth petitioner’s alleged appeal by letter signed by themselves as accountants for petitioner. Their letter does not contain specific language of appeal as in their letter for petitioner’s 1986 appeal wherein they stated "We are taking advantage of the 'Hot Line’ appeal mechanism”, nor as in their letter for the 1987 appeal wherein they stated "In accordance to [Subpart] 86-1 of the Commissioners Rules and Regulations, the Long Island College wishes to appeal”.
Respondents appear to have disregarded the accountants’ alleged appeal letter. As stated in respondents’ brief "The Ernst & Whinney letter, which petitioner now purports to be its appeal, is not administrative appeal under the regulations, and was never treated as such.” Upon inquiry by petitioner in March 1990, after petitioner received respondents’ determination of petitioner’s 1986 appeal, petitioner was advised by letter of respondents dated April 23, 1990 that "according to our records, no appeal has been received, established and acknowledged for the 1985 rate year. Therefore, this issue for 1985 is considered closed.” Petitioner considers respondents’ letter as the only transmitted final denial of its 1985 appeal *372 and, therefore, contends that this article 78 proceeding is timely.
It is undisputed that petitioner’s alleged 1985 appeal did not comply with the requirements of exhibit 2 nor more specifically with the requirements of 10 NYCRR 86-1.17 (c). Petitioner, however, alleges, as respondents’ waiver and nonobservance of the requirements of the regulation, that similar letters of appeal by various hospitals (the accountants claim to represent 1,500 hospitals) were considered by respondents without objection to the letter form of appeal. Petitioner further alleges that its employee in charge of "Medicaid rate appeals pending with DOH [respondent Department of Health] * * * regularly called DOH to inquire as to the status of those two appeals [1985, 1986]. I usually called once a month, but some months I called more often than that * * * On each occasion I was told that the 1985 appeal, together with the 1986 appeal as to the same issue, were being processed and that no determination had been made yet. At no time was I told that [the 1985] appeal * * * had been improperly filed; to the contrary, every indication that I had * * * was that the appeal was routinely processed.”
Although, the respondents are not bound by their later conduct in processing the 1986 and 1987 letter appeals, since a subsequent procedure is not binding on an earlier procedure, nevertheless sufficient facts have been presented to create an issue of respondents’ waiver of the formalities of the regulation. Where "there is a doubt as to the existence of a triable issue [as to the 1985 appeal] or when the issue is arguable since ' "issue finding, rather than issue-determination, is the key to the procedure” ’ ”, a hearing is required (Falk v Goodman, 7 NY2d 87, 91).
If petitioner sustains its burden of proof of respondents’ waiver, then petitioner’s 1985 appeal should be considered in the same manner as petitioner’s 1986 and 1987 appeals, since the basic issues are the same in each appeal.
The issue fundamental to all three appeals is the constitutionality of the amendment to the regulation (10 NYCRR 86-1.23 [b]) that provides "Board-designated funds and the accrual of liabilities to the funded depreciation accounts shall not be recognized as funding of depreciation.” (Emphasis added.)
Respondents’ contention is based on their interpretation of their regulations that interest income and gains on the sale of *373 securities of a hospital may be set off against the hospital’s claims of Medicaid reimbursement, except if the funds set up as "Depreciation & Construction Funds” are restricted in their use other than by board of directors’ resolution. "Common among each of these exceptions is a restriction on the hospital’s use of the income beyond the hospital’s control * * * To qualify as income from funded depreciation, the income from such accounts must be restricted by an external source [donors’ limitation on use of funds — lenders’ limitations on use of funds for the replacement of depreciable assets]. If the governing board appropriates resources in this manner, the board may nevertheless have the authority to rescind its action [and therefore] such appropriations should be treated as part of unrestricted funds.”
Respondents further contend that petitioner by its board of directors’ resolution created and funded in 1985, a "Depreciation Fund”, by transferring $10,000,000 to the fund account from other investment accounts. "Although the Board designated the funds in this account 'for purpose of acquiring depreciable assets for use in patient care’ during 1985, 1986 and 1987 rate years, petitioner has acknowledged, in its financial statements, that no amounts were required to be on deposit in the depreciation fund during those years. Moreover, although, the petitioner borrowed $79,750,000 in 1986 to finance $86,445,000 capital project petitioner did not use any of the approximately $12,000,000 on balance in this account for this or any other capital project that year.”
The salutary effect of the amendment is to avoid the difficulty of establishing a retroactive adjustment and to prevent a hospital from receiving a double benefit: reimbursement of its interest expense on its borrowing, while at the same time receiving interest on unrestricted funds, unrestricted to the extent that the board of directors may by new resolution use the accumulated income for its own purposes.
Based on said amendment, respondents set off the interest income from the "Construction Fund” account, stating "Although the corpus of the account is externally restricted for use as collateral, the income from the account is only restricted for capital purposes by designation of the petitioner’s Board of Directors * * * Hence the income on the account has been used to offset reimbursement.” Similarly with respect to the "Depreciation Fund” account — respondents stated "Neither the corpus nor the income from the account is restricted by anyone other then by designation of the petitioner’s Board *374 of Directors”. Thus, based upon the amendment petitioner’s 1986 and 1987 appeals were denied.
Every statute, code, rule, regulation and amendment thereof that is enacted must pass constitutional muster. Respondents do not dispute petitioner’s allegations that (a) they "failed to afford the public an opportunity to comment on the proposed change”, (b) respondents’ " 'Notice of Proposed Rule Making’ in the March 27, 1985 New York State Register * * * did not contain the language which respondents claim they adopted and on which they now rely”, (c) "the Notice of Proposed Rule Making’s 'Regulatory Impact Statement’ contained no discussion of, or even reference to the language that was supposedly added by the amendment”, (d) respondents’ representation "that the proposed amendment would impose no additional costs on health care providers” and (e) respondents’ "Notice of Adoption states that '[n]o substantive changes’ were made after the text of the proposed rule was published on March 27, 1985.”
Petitioner’s exhibit A is a photocopy of respondents’ four-page submission to the Secretary of State for filing and acceptance. Exhibit A contains a certification as follows, "I hereby approve the attached amendments to subdivision (b) of Section 86-1.23 * * * of the Official Compilation of Codes, Rules and Regulations of the State of New York enacted on May 23, 1985 * * * to be effective upon filing with the Secretary of State * * * Prior Notice of this action, required under the provisions of the Administrative Procedure Act, was published in the New York State Register on March 27, 1985.” (Emphasis added.) The approval was signed by respondent Axelrod. Appended to the approval is a certification of the enactment of the amendments with the same statement that prior notice of the amendments was published on March 27, 1985. Thus, the representation of publication of the contested amendment made by respondent Axelrod and certified by the executive secretary was incorrect and misleading, so that the filing with the Secretary of State was based on an incorrect document.
Petitioner annexed exhibit B, respondents’ publication in the New York Register, to emphasize the omission of the contested amendment and further annexed exhibit C, respondents’ publication in the New York Register of July 3, 1985, wherein the "Notice of Adoption” states "Final rule compared with proposed rule. No substantive changes.”
*375 State Administrative Procedure Act § 202 entitled "Rule making procedure” provides
"1. Notice of proposed rule making, (a) Prior to the adoption of a rule, an agency shall submit a notice of proposed rule making to the secretary of state for publication in the state register and shall afford the public an opportunity to submit comments on the proposed rule * * *
"(ii) the first public hearing on a proposed rule for which such hearing is so required * * *
"(f) The notice of proposed rule making shall * * *
"(v) contain the complete text of the proposed rule * * *
"(vi) include a regulatory impact statement * * *
"5. Notice of adoption, (a) When an agency files a rule with the secretary of state, such agency shall also submit a notice of adoption to the secretary of state for publication in the state register.” (Emphasis added.)
The court finds that respondents did not comply with the State Administrative Procedure Act with respect to the contested amendment.
Executive Law § 102 entitled "Filing and publication of codes, rules and regulations” provides for the manner of adopting codes, rules and regulations and for their transmission to the Secretary of State. The per se transmission to the Secretary of State, as in the instant proceeding, of the adoption of an amendment to the rule or regulation, is not sufficient. Section 102 (2) provides "Immediately upon adopting any new code, rule or regulation * * * the original thereof shall be filed in the office of the department of state. Attached thereto shall be a certificate * * * citing * * * the date of adoption, and the date of publication in the state register of the notice required under the provisions of the state administrative procedure act”. (Emphasis added.)
The Executive Law and the State Administrative Procedure Act require a prior publication, a prior notice to all who may be affected by the new code, rule, regulation or amendment thereof.
As epitomized in Matter of Sunrise Manor Nursing Home v Axelrod (135 AD2d 293, 296-298), "In our view, petitioner is correct in its assertion that DOH’s denial of reimbursement for parity items was based on a policy that should have been published as a regulation and filed with the Secretary of State in accordance with NY Constitution, article IV, § 8 (see, Exec *376 utive Law §§ 101-a, 102; State Administrative Procedure Act § 202) * * * Nevertheless, DOH’s determination was arbitrary and capricious insofar as it applied an unpublished fixed and rigid policy that predetermined petitioner’s application without regard to its merits”. ([Emphasis added]; see also, Matter of Eden Park Health Servs. v Axelrod, 114 AD2d 721; Matter of Sigety v Axelrod, 107 AD2d 985, 987, wherein the court in emphatic language stated "Respondent’s internal rules regarding acceptable salary limitations cannot be binding on petitioner until such time as they are properly published” [emphasis added]; also see, American Assn. of Bioanalysts v Axelrod, 106 AD2d 53, 57, wherein the court stated "Since the fee schedule was not properly promulgated and filed, it is ineffective regardless of any knowledge plaintiffs may have had of it” [emphasis added].)
To accept respondents’ contention, that the State Administrative Procedure Act "does not require that the rule that is finally adopted by the agency mirror the rule that was proposed [and that the Act] contemplates that changes will be made in the rule before it is finally adopted” is to create a broad latitude that may permit nonpublication of a proposed amendment all under the guise of nonmirroring the proposed rule. Of greater gravity, respondents’ contention allows for the inclusion, as in the instant proceeding, of an amendment that would have been seriously contested. This court cannot subscribe to, nor sanction the enactment of a substantive non-published amendment under respondents’ theory of permissive changes.
This court holds that the amendment to 10 NYCRR 86-1.23 (b) reading as follows "Board-designated funds and the accrual of liabilities to the funded depreciation accounts shall not be recognized as funding of depreciation” was improperly enacted in that "it should have been published” "properly published”, and "properly promulgated”. The amendment, therefore, is declared invalid and unconstitutional.
By declaring the amendment invalid the court does not thereby hold that petitioner is entitled as a matter of law to the income from the "Construction Fund” account, nor from the "Depreciation Fund” account. Petitioner has the burden of proof of their proper establishment and more important of the proper necessity and use of such income from the funds that were established solely by resolution of the board of directors.
As best stated in Northwest Hosp. v Hospital Serv. Corp. *377 (500 F Supp 1294, 1300), "Northwest incurred interest expense in connection with the construction of a parking lot and professional building. Even though it had an unrestricted funded depreciation account of more than $2 million, more than enough to pay for the capital improvements, it chose to fund the project by securing a loan. Accordingly, the question is whether interest, normally an allowable expense * * * becomes an unreimbursable cost because the loan was not 'necessary’ * * *
"Necessary requires that the interest:
"(i) Be incurred on a loan made to satisfy a financial need of the provider * * *
"the Supreme Court held that deference is to be given to an administrative agency’s interpretation of a statute, and that when the interpretation of a regulation is involved 'deference is even more clearly in order.’
"Northwest has failed to demonstrate any basis for overturning the decision of the Commissioner. It had adequate working capital from which the construction project could have been funded.”
Petitioner may not establish funds that shall have the effect of exempting general income from Medicaid reimbursement offset.
Respondents in their affidavit in opposition allege "The Department has or is granting appeals for 1986/1987 capital reimbursement to remove the income from the sinking fund from the interest offset.” Thus, the income earned in the "Sinking Fund” has been eliminated as an issue.
Accordingly, petitioner’s petition is sustained as above indicated. This matter, therefore, is remanded to respondents for hearing and determination of the issues above defined, in accordance with the opinion herein.