[870 NE2d 133, 838 NYS2d 815]

MARIA CUBAS et al., Appellants, v RAYMOND MARTINEZ, Individually and as Commissioner of the New York State Department of Motor Vehicles, Respondent.

Argued May 1, 2007; decided June 7, 2007

## POINTS OF COUNSEL

*Patterson Belknap Webb & Tyler LLP,* New York City (*Adam J. Pessin, Steven A. Zalesin* and *Christine H. Miller* of counsel), and *Puerto Rican Legal Defense and Education Fund* (*Foster S. Maer* and *Jackson Chin* of counsel), for appellants. I. The Department of Motor Vehicles' rule requiring legal presence is invalid under the laws of New York. (*Giuliani v Hevesi,* 90 NY2d 27; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588; *Seittelman v Sabol,* 91 NY2d 618; *Lorillard Tobacco Co. v Roth,* 99 NY2d 316; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577; *Uribe v Merchants Bank of N.Y.,* 91 NY2d 336; *Matter of Jones v Berman,* 37 NY2d 42; *Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health,* 66 NY2d 948; *Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *People v Cull,* 10 NY2d 123.)

II. The Department of Motor Vehicles' Temporary Visitors Program is invalid under the laws of New York. (*Wisholek v Douglas,* 97 NY2d 740; *Boreali v Axelrod,* 71 NY2d 1; *Matter of Schwartfigure v Hartnett,* 83 NY2d 296; *Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *Matter of Lue-Shing v Travis,* 12 AD3d 802.) III. The legal presence rule and the Temporary Visitors Program violate equal protection. (*Matter of Aliessa v Novello,* 96 NY2d 418; *Plyler v Doe,* 457 US 202; *Sugarman v Dougall,* 413 US 634; *Board of Educ., Levittown Union Free School Dist. v Nyquist,* 83 AD2d 217; *Trimble v Gordon,* 430 US 762; *Hernandez v Robles,* 7 NY3d 338; *Matter of Esler v Walters,* 56 NY2d 306; *Graham v Richardson,* 403 US 365; *Balbuena v IDR Realty LLC,* 6 NY3d 338; *Bernal v Fainter,* 467 US 216.) IV. Plaintiffs are favored by a balance of the equities and will suffer irreparable injury in the absence of relief. (*Pringle v Wolfe,* 88 NY2d 426; *Bell v Burson,* 402 US 535; *Krimstock v Kelly,* 306 F3d 40; *Stypmann v San Francisco,* 557 F2d 1338; *Conroy v Melton,* 82 Misc 2d 750; *Brad H. v City of New York,* 185 Misc 2d 420; *Chernoff Diamond & Co. v Fitzmaurice, Inc.,* 234 AD2d 200.)

*Andrew M. Cuomo, Attorney General,* New York City (*Gregory Silbert, Barbara D. Underwood* and *Michael S. Belohlavek* of counsel), for respondent. I. All of plaintiffs' claims should be dismissed as nonjusticiable. (*Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo,* 64 NY2d 233; *Kihl v Pfeffer,* 94 NY2d 118; *Perez v New York City Hous. Auth.,* 229 AD2d 310; *Rocco v KCL Protective Servs.,* 283 AD2d 317; *Sarlund v Anderson,* 205 F3d 973; *Empire Blue Cross & Blue Shield v Finkelstein,* 111 F3d 278; *Matter of Hearst Corp. v Clyne,* 50 NY2d 707.) II. The challenged documentation requirements are within the lawful authority of the Commissioner of Motor Vehicles. (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal,* 3 NY3d 337; *Matter of Jones v Berman,* 37 NY2d 42; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539; *Boreali v Axelrod,* 71 NY2d 1; *Matter of Abrams v New York City Tr. Auth.,* 39 NY2d 990; *Rent Stabilization Assn. of N.Y. City v Higgins,* 83 NY2d 156; *Matter of New York State Health Facilities Assn. v Axelrod,* 77 NY2d 340; *Motor Vehicle Mfrs. Assn. of United States, Inc. v State Farm Mut. Automobile Ins. Co.,* 463 US 29.) III. The one year/six month guideline is within the Commissioner of Motor Vehicles lawful authority. IV.

The Department of Motor Vehicles' documentation requirements and the one year/six month guideline need not be promulgated as regulations or be filed with the Secretary of State to be effective. (*Matter of Elcor Health Servs. v Novello,* 100 NY2d 273; *Matter of Town of Middletown v State Bd. of Real Prop. Servs.,* 272 AD2d 657; *Matter of HMI Mech. Sys. v McGowan,* 277 AD2d 657; *National Assn. of Ind. Insurers v State of New York,* 207 AD2d 191, 89 NY2d 950; *Caraballo v Reich,* 11 F3d 186; *People v Ditniak,* 28 NY2d 74; *People v Cull,* 10 NY2d 123; *Matter of New York City Tr. Auth. v New York State Dept. of Labor,* 88 NY2d 225; *Matter of Rubin v Campbell,* 48 NY2d 805.) V. The challenged documentation requirements and the one year/six month guideline fully comport with state and federal equal protection guarantees. (*Dallas v Stanglin,* 490 US 19; *FCC v Beach Communications, Inc.,* 508 US 307; *Plyler v Doe,* 457 US 202; *Miller v Reed,* 176 F3d 1202; *Dixon v Love,* 431 US 105; *United States v Toner,* 728 F2d 115; *John Doe No. 1 v Georgia Dept. of Pub. Safety,* 147 F Supp 2d 1369; *Hernandez v Robles,* 7 NY3d 338; *LeClerc v Webb,* 419 F3d 405, 444 F3d 428; *Matter of Aliessa v Novello,* 96 NY2d 418.)

### OPINION OF THE COURT

Smith, J.

The Department of Motor Vehicles (DMV) will not issue driver's licenses to applicants who lack valid Social Security numbers (SSNs), unless those applicants prove that they are ineligible for SSNs. As proof of ineligibility the DMV requires applicants to submit immigration documents issued by the Department of Homeland Security (DHS).

Plaintiffs, claiming that this DMV policy is essentially an effort to deny driver's licenses to immigrants not legally present in New York, challenge it as unauthorized by statute, as infringing constitutional protections and as violating procedural requirements applicable to agency rules and regulations. We hold that the Appellate Division correctly dismissed plaintiffs' claims.

### Facts and Procedural History

Plaintiffs are immigrants from foreign countries who live in the State of New York. Their complaint alleged that they, and the other members of the class they seek to represent, "have been or will be denied driver's licenses or identification cards" because of their inability to produce SSNs "or otherwise docu-

ment their legal immigration status" to the DMV's satisfaction. More specifically, plaintiffs complained of two DMV practices.

First, plaintiffs challenged the so-called "one year six month" policy, under which the DMV required applicants who were authorized to remain in the United States only temporarily to submit documents showing that their authorization to remain had extended for at least a year, and that they had at least six months remaining in their legal stay. On April 23, 2007, DMV announced that it was rescinding the one year six month policy, and the Attorney General has represented to us that the rescission is permanent. We are satisfied that this aspect of the case is moot.

In the second branch of plaintiffs' case, now the only one before us, they challenge the form of proof that the DMV demands of applicants for driver's licenses who claim to be ineligible for SSNs. The practice plaintiffs complain of began in 2001, when the DMV made its procedure for verifying ineligibility more stringent.

Until 2001, an applicant who met all conditions to the issuance of a driver's license except the submission of a valid SSN could get a license by submitting a letter (known as an "L676" letter) from the Social Security Administration (SSA) rejecting an application for a Social Security card on the ground that the applicant was ineligible for an SSN. The form of L676 letter acceptable to the DMV says the applicant's DHS-issued documents show that no SSN can be issued—i.e., that the applicant, though authorized to be present in the United States, is not authorized to work here.

On September 6, 2001, the DMV began requiring applicants without SSNs to submit to the DMV not only an L676 letter, but their underlying DHS documents. Plaintiffs claim that, in imposing this new requirement, the Commissioner of Motor Vehicles acted without statutory authority and in an arbitrary and capricious manner; that he violated the mandatory rule-making requirements of the State Administrative Procedure Act and the State Constitution; and that he deprived them and others similarly situated of the equal protection of the laws.

Supreme Court granted plaintiffs' motion for a temporary restraining order and preliminary injunction and denied the Commissioner's cross motion to dismiss the complaint, holding, as to the claims that remain at issue here, that the DMV's insistence on DHS documentation was unauthorized by statute and

violated rule-making requirements. The Appellate Division reversed, declared the procedures used by the Commissioner to be within his authority and enforceable, and dismissed the complaint. Plaintiffs appeal to us as of right, pursuant to CPLR 5601 (b). We now affirm the Appellate Division's order, except as it relates to the claims that have become moot.

## Discussion

Plaintiffs challenge the DMV's policy of requiring DHS documentation on substantive and procedural grounds. Both lack merit.

## I

Vehicle and Traffic Law § 502 (1) requires applicants for driver's licenses to "furnish such proof of identity, age, and fitness as may be required by the commissioner." A 1995 amendment to section 502 (1) added the more specific requirement of an SSN: "In addition, the commissioner also shall require that the applicant provide his or her social security number." Similar requirements apply to applicants for the renewal of driver's licenses (Vehicle and Traffic Law § 502 [6]) and non-driver identification cards (Vehicle and Traffic Law § 490 [3] [a] [i]). Vehicle and Traffic Law § 508 (2) says that all applicants "shall furnish all information required by statute and such other information as the commissioner shall deem appropriate."

The statutes might be thought to mean that only people with SSNs may receive driver's licenses, but the Commissioner has not interpreted them so strictly. A DMV regulation, 15 NYCRR 3.9 (a), says: "An applicant for a license or a non-driver identification card or an applicant renewing such a license or such identification card must submit his or her social security number *or provide proof that he/she is not eligible for a social security number.*" (Emphasis added.)

The Commissioner thus concedes that people who do not have SSNs—i.e., people without authorization to work in the United States—may be entitled to driver's licenses. Plaintiffs also make a concession: They do not challenge the DMV's right to require proof that applicants are ineligible for SSNs. They admit in their brief that the DMV may properly verify "possession of a SSN or SSN ineligibility." Indeed, they concede that the DMV's former requirement for proof of ineligibility—an L676 letter from SSA, saying that the applicant's DHS documents demonstrate ineligibility for an SSN—was valid. They object, however,

to the DMV's insistence on the submission of DHS documents as proof of ineligibility.

Plaintiffs' concession is important. By making it, they essentially concede that the Commissioner need not issue driver's licenses to undocumented aliens, because undocumented aliens cannot obtain L676 letters showing that they are ineligible for SSNs. To state the obvious, undocumented aliens lack documents, United States-issued documents at least, and the DMV's right to insist on such documents is undisputed.

The question thus boils down to *what* United States-issued documents the DMV can lawfully require as proof of ineligibility for an SSN. Plaintiffs say it cannot require the submission of DHS documents, but their argument is flawed.

To get the kind of L676 letter required under former DMV policy—a policy plaintiffs concede was valid—a person must submit DHS documents to the SSA. The L676 letter submitted in this case as an example says: "YOUR DEPARTMENT OF HOMELAND SECURITY DOCUMENTS SHOW THAT YOU DO NOT HAVE WORK AUTHORIZATION . . . ." The obvious question arises: If an applicant has already submitted DHS documents to the SSA, why can he or she not submit the same documents to the DMV? Plaintiffs offer no answer to this question.

The Commissioner says that the DMV's decision to require DHS documentation in addition to an L676 letter was necessary to prevent people from obtaining driver's licenses by fraud. He points out that the L676 letter is a simple, publicly available form consisting of typed and sometimes handwritten words on white paper, easily faked by anyone with access to a Xerox machine. DHS documents, the Commissioner says, are not so easily manufactured. Again, plaintiffs offer no real answer: they have submitted no evidence to show either that the danger of fraud is not real, or that the insistence on DHS documentation will be ineffective in combating it. Nothing in the record suggests that the DMV's concern about fraud is a subterfuge. The policy of requiring DHS documentation was not the result of a post-September 11 panic over immigration; the internal document adopting the policy is dated September 6, 2001.

In short, plaintiffs fail to dispute two key facts: the policy at issue imposes no significant burden on driver's license applicants beyond the burden, which plaintiffs concede is properly imposed, of submitting an L676 letter; and the requirement of

submitting DHS documentation to the DMV is a reasonable fraud-prevention measure. These undisputed facts defeat plaintiffs' challenges to the substance of the DMV policy.

Plaintiffs argue that, by requiring DHS documentation showing ineligibility for an SSN, the Commissioner has exceeded his statutory authority to decide what materials applicants for licenses must submit. The statutes make plain that that authority is broad: applicants are to furnish "such proof of identity . . . as may be required by the commissioner" (Vehicle and Traffic Law § 502 [1]) and "such other information as the commissioner shall deem appropriate" (*id.* § 508 [2]). Indeed, plaintiffs admit that the Commissioner can require proof of ineligibility for an SSN in the form of an L676 letter based on DHS documents. They do not explain how, in light of that concession, it could possibly be beyond his authority to require submission of the DHS documents themselves. His choice to do so is clearly within the power granted by the Legislature.

■ Plaintiffs also argue that to require submission of DHS documents is a violation of equal protection. They frame the issue in terms of discrimination against aliens, or against undocumented aliens—but, as what we have already said makes clear, this case does not present any such issue. The line drawn by the policy plaintiffs challenge is only between applicants who submit L676 letters unaccompanied by the underlying DHS documents, and those who submit the underlying documents with the letters. This classification of applicants plainly creates no suspect class, infringes no fundamental right and raises no serious equal protection questions (*see Affronti v Crosson,* 95 NY2d 713, 718-719 [2001]).

■ Perhaps mindful of the gap in logic from which their argument suffers, plaintiffs insist that their attack on DMV policy is not limited to the DMV's requirement that ineligibility for an SSN be proved by DHS documents. Painting with a broader brush, they attack what they call the DMV's "legal presence requirement" for "all applicants for licenses and IDs." But plaintiffs point to no specific policy or practice in which they say the "legal presence requirement" is embodied, other than the practice of requiring DHS documents to prove SSN ineligibility. Plaintiffs rely on internal documents in which the DMV has used the term "legal presence"—but these documents have nothing to do with any policy or practice that plaintiffs say is unlawful; the documents, dated in 2002, state that DMV requirements for proof of *age*—requirements plaintiffs do not challenge in this litigation—serve to verify "legal presence."

We conclude that plaintiffs have failed to allege the existence of any "legal presence requirement" distinct from the DMV's practice of insisting on DHS documents as proof of ineligibility for an SSN. And plaintiffs have failed, for the reasons we have explained, to allege facts showing that that practice is substantively unlawful.

## II

Plaintiffs also challenge the DMV's policy on procedural grounds. As they point out, while the requirement that each applicant must "provide proof that he/she is not eligible for a social security number" is embodied in a formal regulation, the requirement that that "proof" include DHS documents is reflected only in an internal DMV memorandum. Plaintiffs say that this informal method of imposing the requirement violates the State Constitution and the State Administrative Procedure Act.

Article IV, § 8 of the State Constitution says, in relevant part:

> "No rule or regulation made by any state department, board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state. The legislature shall provide for the speedy publication of such rules and regulations by appropriate laws."

State Administrative Procedure Act § 202 (1) (a) says, in relevant part: "Prior to the adoption of a rule, an agency shall submit a notice of proposed rule making to the secretary of state for publication in the state register and shall afford the public an opportunity to submit comments on the proposed rule."

██ DMV's requirement of DHS documentation was not filed in the Department of State, was not published as a rule, and was not preceded either by a notice of proposed rulemaking or by an opportunity for public comment. Plaintiffs contend that the failure to follow these procedures renders the requirement invalid—as it does, if the requirement is a "rule" or "regulation" within the meaning of the constitutional and statutory provisions. The Commissioner argues, however, that the documentation requirement is merely an interpretation or

explanation of a preexisting rule. We agree with the Commissioner.

A "rule" is defined by the State Administrative Procedure Act to include "the whole or part of each agency statement, regulation or code of general applicability that implements or applies law," but excluding "interpretive statements and statements of general policy which in themselves have no legal effect but are merely explanatory" (State Administrative Procedure Act § 102 [2] [a] [i]; [b] [iv]). We have said that a "rule or regulation" is "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]). Our cases show that there is no clear bright line between a "rule" or "regulation" and an interpretative policy; but the requirement at issue here is the latter, not the former.

The requirement of DHS documentation does not impose a new obligation on applicants for driver's licenses. The obligation to supply "proof that [the applicant] is not eligible for a social security number" is imposed by a preexisting regulation, 15 NYCRR 3.9 (a). The policy plaintiffs challenge merely specifies what proof is acceptable. The policy does not create or deny substantive rights of members of the public—i.e., it does not provide that some people are eligible and some ineligible for driver's licenses—but sets forth the procedure for the agency to follow in deciding who meets a predetermined test for eligibility.

The policy resembles, in relevant ways, the one challenged in *Matter of Elcor Health Servs. v Novello* (100 NY2d 273, 279 [2003]). We held in *Elcor* that the Department of Health could require certain documentation from health care providers to distinguish between "restorative therapy" and "maintenance therapy" without promulgating those documentation requirements as a regulation. (*See also People v Ditniak*, 28 NY2d 74, 80 [1971] [implementation of general authority to close Thruway service areas did not require rulemaking].) By contrast, requirements that we have held to be "rules" or "regulations" were generally broader, and of more direct public impact, than the one at issue here (*see People v Cull*, 10 NY2d 123, 129 [1961] [setting of speed limits pursuant to general statutory authority held to require rulemaking]; *Matter of Schwartfigure v Hartnett*, 83 NY2d 296, 301 [1994] [requirement of 50% setoff for certain overpayments of unemployment insurance benefits held to require rulemaking]).

We therefore reject plaintiffs' procedural challenge to the DMV's requirement that DHS documents be submitted by applicants for driver's licenses who lack SSNs.

\* \* \*

Accordingly, the order of the Appellate Division should be modified to delete the declaratory judgment that Commissioner's one year six month policy is within his authority and enforceable and, as so modified, affirmed, without costs.

CIPARICK, J. (dissenting in part). I agree with the majority that plaintiffs' challenge to the one year/six month rule has been rendered moot. However, because I believe that the Commissioner's imposition of a "legal presence" requirement in order to be eligible for a driver's license was outside the scope of his authority and, in any event, violated the State Administrative Procedure Act, I respectfully dissent.

Under the Vehicle and Traffic Law, an applicant for a driver's license "shall furnish such proof of identity, age, and fitness as may be required by the commissioner . . . [T]he commissioner also shall require that the applicant provide his or her social security number" (Vehicle and Traffic Law § 502 [1]). Similar requirements are in place for non-driver identification card (NDID) applicants (*see* Vehicle and Traffic Law § 490 [3]). The Commissioner has the authority to promulgate regulations in furtherance of these requirements (*see* Vehicle and Traffic Law § 508 [4]). As relevant here, in order to obtain or renew a driver's license or NDID, the applicant "must submit his or her social security number or provide proof that he/she is not eligible for a social security number" (15 NYCRR 3.9 [a]). The failure to provide a Social Security number (SSN) or proof of ineligibility will result in disqualification from procuring or renewing a license or NDID (*see* 15 NYCRR 3.9 [b]).

The DMV has developed new procedures regarding proof of identity, date of birth and ineligibility for a Social Security number which, in effect, impose an additional requirement on applicants—"legal presence," or proof consistent with lawful presence in the United States. An internal document dated April 19, 2002 known as a "Mailbag," states that

> "[r]equiring proof of date of birth documentation is the single most important tool for preventing applicants, who do not have legal presence, from obtaining NYS driving privileges or NYS photo docu-

ments . . . [T]he only legitimate document that (s)he can present as proof of date of birth is [a Department of Homeland Security (DHS)] document."[1]

As proof of ineligibility for a SSN, the DMV under the old scheme would accept a form issued by the Social Security Administration (SSA), the SSA-L676, that lists several reasons why a person may be ineligible for a SSN, including that the individual has not produced the necessary documentation to establish identity or citizenship/lawful alien status. Recent internal DMV documents indicate that it will only accept a letter of ineligibility issued because the applicant's "[DHS] documents show that [he or she does] not have work authorization and . . . [has] not provided a current valid non-work reason and supporting documentation for needing a social security number or replacement card." In addition, DMV now requires applicants to provide current DHS documents in support of the ineligibility determination.

According to the Commissioner, these types of requirements are within his statutory authority. In particular, the Commissioner notes that it is important to be able to determine an applicant's identity so that licenses and NDIDs are not used for fraudulent or criminal purposes. Moreover, the Commissioner asserts that the SSA-L676 form can be easily forged and that requiring current DHS documentation provides additional security since those documents can now be verified through the on-line SAVE (Systematic Alien Verification for Entitlements) system made available to the DMV through DHS.

Contrary to the Commissioner's argument, it seems that the DMV has effectively added a requirement for license eligibility not authorized by statute. Through this policy the Commissioner is effectively setting immigration policy—an act well outside the scope of his authority—in the guise of verifying identity, which is clearly within his powers. " 'Even under the broadest and most open-ended of statutory mandates, an administrative agency may not use its authority as a license to correct whatever societal evils it perceives' " (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 865 [2003], quoting *Boreali v Axelrod*, 71 NY2d 1, 9 [1987]).

---

**1.** Although the majority notes that this document actually refers to proof of date of birth (or age), it clearly reflects the intent to preclude those without legal presence from obtaining a driver's license or NDID.

In *Matter of Jones v Berman* (37 NY2d 42, 52-53 [1975]), the Court held that although the Social Services Commissioner may have promulgated a regulation in order to prevent fraud, the regulation imposed a requirement that was not found in the statute. "Administrative agencies can only promulgate rules to further the implementation of the law as it exists; they have no authority to create a rule out of harmony with the statute" (*Jones*, 37 NY2d at 53).

I do not dispute that fraud prevention is an important public purpose. However, as the trial court found, "evidence in the record indicates that DMV's primary motivation has little to do with the identity of the applicants and more to do with national security issues" (2005 NY Slip Op 30091[U], at *10). If policy procedures requiring lawful presence in this country are to be implemented before the issuance of a driver's license or a non-driver identification card, they should be implemented by the Legislature rather than the Motor Vehicles Commissioner. The Commissioner simply has not been vested with the authority to determine immigration or national security policies.[2]

But even assuming the Commissioner's authority is as broad as the majority implies and that the Commissioner is authorized to act in this regard, the requirement imposed is a rule in violation of State Administrative Procedure Act and the State Constitution. The Constitution provides that "[n]o rule or regulation made by any state department, board, bureau, officer, authority or commission, except such as relates to the organization or internal management of a state department, board, bureau, authority or commission shall be effective until it is filed in the office of the department of state" (NY Const, art IV, § 8). In addition, under the State Administrative Procedure Act, "no rule shall become effective until it is filed with the secre-

---

**2.** It should be noted that Congress has enacted the REAL ID Act of 2005 (Pub L 109-13 division B, 119 US Stat 302, 312). Title II, § 202 of this Act imposes "minimum document requirements and issuance standards for federal recognition" of driver's licenses and identification cards. The Act states that "a Federal agency may not accept, for any official purpose, a driver's license or identification card issued by a State to any person unless the State is meeting the requirements of this section" (tit II, § 202 [a] [1]). The Act requires a state to verify an applicant's "lawful status" in the United States (§ 202 [c] [2] [B]). States have until May 2008 to comply with the Act, unless they apply for and receive an extension from DHS until December 31, 2009 (*see* Department of Homeland Security, REAL ID Proposed Guidelines: Questions and Answers, <http://www.dhs.gov/xprevprot/laws/gc_1172767635686.shtm> [last mod Mar. 1, 2007]). New York has yet to amend the Vehicle and Traffic Law to comply with this legislation.

tary of state . . . ." (State Administrative Procedure Act § 203 [1]; *see also* § 202 [1] [requiring notice of proposed rulemaking and opportunity for public comment]; Executive Law § 102 [1] [a].) We have previously held "that only a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers constitutes a rule or regulation" (*Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health*, 66 NY2d 948, 951 [1985]).

Here, the legal presence requirement is applied rigidly and without consideration for the circumstances of individual applicants (*see Matter of Schwartfigure v Hartnett*, 83 NY2d 296, 301-302 [1994]). The record does not support DMV's assertion that its supervisors have the ability to make exceptions to this policy. Nor can the policy be deemed to relate to the "internal management" of the agency such that it would be excluded from the filing requirement under the State Constitution (*see* NY Const, art IV, § 8). Instead, it applies only externally, to persons seeking licenses or identification cards.

Certainly, the requirement to submit homeland security documents proving lawful presence in the United States constitutes "a fixed, general principle," as it has become a prerequisite for obtaining a license or NDID that is contained neither in the statute nor in existing regulations. Thus, the Commissioner is not merely interpreting the statute or filling in the interstices (*see Matter of Medical Socy.*, 100 NY2d at 866), but is rulemaking without the requisite filing and notice to the public in violation of the State Administrative Procedure Act. Those applicants who cannot adequately establish their lawful presence in the United States will not be issued a driver's license or NDID in New York. The Commissioner's argument that this is not "a fixed, general principle" due to the evolving nature of what is considered acceptable identification documentation is unconvincing. Those who are unable to satisfy the documentation requirements are foreclosed from obtaining a license or NDID, a result that is clearly not mandated by statute or duly promulgated existing regulations.

As a result, I would modify the order of the Appellate Division by granting plaintiffs' motion for a preliminary injunction to the extent that the Commissioner should be enjoined from imposing a legal presence requirement by requiring the production of DHS documents as a condition precedent to the issuance or renewal of a driver's license, learner's permit or NDID.

Judges Graffeo, Read, Pigott and Jones concur with Judge Smith; Judge Ciparick dissents in part in a separate opinion in which Chief Judge Kaye concurs.

Order modified, etc.