Mrijaj v Genting N.Y. LLC (2025 NY Slip Op 01064)

Mrijaj v Genting N.Y. LLC

2025 NY Slip Op 01064

Decided on February 25, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: February 25, 2025

Before: Kern, J.P., Friedman, Kapnick, Rodriguez, O'Neill Levy, JJ. 

Index No. 34065/19|Appeal No. 3765|Case No. 2024-00328|

[*1]Pren Mrijaj, on Behalf of Himself and all others similarly situated, Plaintiff-Appellant,
v
Genting New York LLC Doing Business as Resorts World Casino New York City, Defendant-Respondent.

Harris St. Laurent & Wechsler LLP, New York (Andrew St. Laurent of counsel), for appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (Benjamin D. Greenfield of counsel), for respondent.

Order, Supreme Court, Bronx County (Veronica G. Hummel, J.), entered December 19, 2023, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion for class certification and granted, in part, defendant's cross-motion to dismiss the complaint, unanimously affirmed, without costs.
Plaintiff alleges that he was detained at defendant's casino on suspicion of having illegally damaged defendant's video lottery gaming equipment and was arrested when he refused to pay for the alleged damage. Plaintiff further alleges that he contacted the casino over a year later and was told he was cleared to return, but upon his next visit, defendant detained him a second time and again threatened to contact law enforcement if he did not pay for the same alleged damage. Plaintiff brought a putative class action against defendant alleging, as relevant to this appeal, that its conduct was negligent and violated General Business Law § 349.
Defendant's conduct in detaining plaintiff the first time was consistent with its obligations under the regulations and guidance of the New York Gaming Commission. The Gaming Commission requires licensed video lottery gaming agents to maintain a "security department," which "shall be responsible for . . . [t]he protection of . . . the video lottery gaming facility's property from illegal activity" and for "[t]he detainment of each individual as to whom there is probable cause to believe that he or she has engaged in" certain unlawful conduct "for the purpose of notifying appropriate law enforcement authorities" (9 NYCRR 5108.1[c][3][iv], [v]).
Furthermore, the Gaming Commission's Bulletin 22 elaborates on licensed facilities' detainment obligations, stating that when "a patron has been . . . identified as having recklessly damaged . . . equipment," the facility's security staff must "give the patron the option to make immediate restitution for the damages." "If a patron declines . . . to make immediate restitution, . . . the [security staff] will inform the patron that criminal charges will be brought against him/her, . . . the local police agency will be contacted to arrest the individual," and the patron will be excluded from the property "until restitution is made, or 90 days, whichever is greater."
We reject plaintiff's contention that in publishing Bulletin 22, the Gaming Commission did not follow the rulemaking procedures set forth in State Administrative Procedure Act, thus rendering Bulletin 22 invalid as an unpromulgated rule or regulation (State Administrative Procedure Act §§ 102[2][a][i], [b][iv]; 202[1][a]). Rather, Bulletin 22 is a "reasonable interpretation of" 9 NYCRR 5108.1(c)(3) (Matter of Elcor Health Servs. v Novello, 100 NY2d 273, 279 [2003]), as the Bulletin sets forth guidelines for detaining patrons and making probable cause determinations. Although section 5108.1(c)(3) does not mention restitution, Bulletin 22's requirement that licensees "give . . . patron[s] the option [*2]to make immediate restitution for . . . damages" to promptly end their detentions merely operates as an instruction for carrying out facilities' existing detainment responsibilities. Indeed, if a patron refuses to pay, Bulletin 22 makes clear that the Gaming Commission "does not expect facilities to pursue legal claims or begin collection procedures," but rather requires them to contact law enforcement, which is consistent with their duty under § 5108.1(c)(3). In other words, Bulletin 22 does not impose a new obligation on licensees or conflict with the regulation, but merely specifies guidelines (see Cubas v Martinez, 8 NY3d 611, 621 [2007]).
Bulletin 22 also does not have legal effect on its own, but only by virtue of existing regulations, which empower the Gaming Commission to suspend or revoke a gaming license for "[f]ailure to comply with instructions of the [C]ommission concerning a licensed activity" (9 NYCRR 5113.1[b][2]). Defendant's agreement with the Commission also requires that defendant operate "in accordance with . . . the [Commission's] regulations, bulletins and instructions."
Bulletin 22 is not inconsistent with CPLR article 52 because it does not authorize self-help or seizure for the purpose of collecting debts. Instead, Bulletin 22 instructs licensees to rely on law enforcement to address a patron's decision not to pay.
Plaintiff's conclusory arguments fail to demonstrate that his due process rights were violated by any deprivation of liberty arising from his first detention and authorized by Bulletin 22.
Because defendant's conduct with respect to plaintiff's first detention was consistent with its obligations under Bulletin 22, Supreme Court properly dismissed plaintiff's General Business Law and negligence claims arising from that detention. In addition, plaintiff fails to address whether or how defendant's conduct was "materially misleading," as is required for a General Business Law § 349 claim (Plavin v Group Health Inc., 35 NY3d 1, 10 [2020]), nor has plaintiff explained how defendant's conduct was unreasonable in light of Bulletin 22.
As to the first detention, Supreme Court correctly dismissed the causes of action for false imprisonment, intentional infliction of emotional distress, and assault and battery as barred by the statute of limitations. Plaintiff commenced this action on November 26, 2019, more than one year after his first detention on January 19, 2018 (CPLR 215[3]; see Spinale v 10 W. 66th St. Corp., 291 AD2d 234, 235 [1st Dept 2002]).
Plaintiff also purports to object to the court's dismissal of his causes of action for unjust enrichment and larceny by extortion/conversion, but, in fact, the court declined to dismiss those claims as to the second detention, which is when plaintiff alleges that he paid the restitution.
The court also providently exercised its discretion in denying plaintiff's motion for class certification. Plaintiff's only remaining claims arise from his second detention, which [*3]involved unique circumstances during which defendant arguably acted beyond its obligations and authority under Bulletin 22. Because the facts underlying plaintiff's remaining claims do not mirror those underlying the claims of the class, typicality is lacking (see CPLR 901[a][3]). Plaintiff's claims do not "derive from the same . . . course of conduct that gave rise to the claims of other class members," and the defenses to be asserted against plaintiff are not typical of the "defenses asserted against class members" (Pludeman v Northern Leasing Sys., Inc., 74 AD3d 420, 423 [1st Dept 2010]; see also Egan v Telomerase Activations Sciences, Inc., 127 AD3d 653, 654 [1st Dept 2015]).
We have considered plaintiff's additional arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 25, 2025